| | |
|---|---|
| Debtor 1 | Dale Harms |
| Debtor 2 | |
| United States Bankruptcy Court for the: | Northern District of California, Oakland Division |
| Case number | 1840758 |

Official Form 410

# Proof of Claim

04/16

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C.§503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents**; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) **that you received.**

| Part 1: | Identify the Claim |
|---|---|

| | |
|---|---|
| **1. Who is the current creditor?** | THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC. ALTERNATIVE LOAN TRUST 2005-27, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2005-27 <br><br> Other names the creditor used with the debtor |
| **2. Has this claim been acquired from anyone else?** | ☑ No <br> ☐ Yes    From whom? |
| **3. Where should notices and payments to the creditor be sent?** <br><br> Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?** <br><br> Shellpoint Mortgage Servicing <br> PO Box 10826 <br><br> Greenville      SC      29603-0826 <br><br> Contact phone    (800) 365-7107 <br> Contact email   mtgbk@shellpointmtg.com <br><br> Uniform claim identifier for electronic payments in chapter 13 (if you use one) | **Where should payments to the creditor be sent?** (if different) <br><br> Shellpoint Mortgage Servicing <br><br><br> Contact phone    (800) 365-7107 <br> Contact email |
| **4. Does this claim amend one already filed?** | ☑ No <br> ☐ Yes    Claim number on court claims registry (if known)           Filed on |
| **5. Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No <br> ☐ Yes    Who made the earlier filing? |

EXHIBIT 1

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☐ No

☑ Yes  Last 4 digits of the debtor's account or any number you use to identify the debtor: 8201

**7. How much is the claim?**  $574,402.71

**Does this amount include interest or other charges?**

☐ No

☑ Yes  Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Money Loaned

**9. Is all or part of the claim secured?**

☐ No

☑ Yes  The claim is secured by a lien on property.

**Nature of property:**  930 West Cypress Ro, Oakley, CA 94561

☑ Real estate.  If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle.

☐ Other. Describe:

**Basis for perfection:**  Note/Mortgage

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recordsd.)

**Value of Property:**

**Amount of the claim that is secured:**  $574,402.71

**Amount of the claim that is unsecured:**  $0.00  (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**  $198,929.29

**Annual Interest Rate** (when case was filed)  4.2500000%

☐ Fixed

☑ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes  **Amount necessary to cure any default as of  the date of the petition.**

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes  Identify the property:

EXHIBIT 1

**12. Is all or part of this claim entitled to priority under 11 U.S.C. § 507(a)??**

☑ No

☐ Yes  *Check all that apply:*

<span style="background-color: #ccc">**Amount entitled to priority**</span>

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C § 507(a)(1)(A) or (a)(1)(B).

☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

☐ Taxes or penalties owed to government units. 11 U.S.C. § 507(a)(8)

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5)

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies.

* Amounts are subject to adjustment on 4/01/16 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:  Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRPB 599(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjuy that the foregoing is true and correct.

Executed on date      06/11/2018

/s/ Barbara Lebiedziewicz
_____
Signature

Print the name of the person who is completing and signing this claim:

| | |
|---|---|
| Name | Barbara Lebiedziewicz |
| Title | Bankruptcy Case Manager |
| Company | Shellpoint Mortgage Servicing |
| Address | PO Box 10826 |
| | Greenville         SC         29603-0826 |
| Contact phone | (800) 365-7107 |
| Contact email | mtgbk@shellpointmtg.com |

EXHIBIT 1

# Mortgage Proof of Claim Attachment

(12/15)

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.

## Part 1: Mortgage and Case Information

| | |
|---|---|
| Case Number: | 1840758 |
| Debtor 1: | Dale Harms |
| Debtor 2: | |
| Last 4 digits to identify: | 8201 |
| Creditor: | THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC. ALTERNATIVE LOAN TRUST 2005-27, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2005-27 |
| Servicer: | Shellpoint Mortgage Servicing |
| Fixed accrual/daily simple interest/other: | Other |

## Part 2: Total Debt Calculation

| | |
|---|---|
| Principal balance: | $412,352.92 |
| Interest due: | $135,494.82 |
| Fees, costs due: | $6,768.35 |
| Escrow deficiency for funds advanced: | $19,786.62 |
| Less funds on hand: - | $0.00 |
| Total debt: | $574,402.71 |

## Part 3: Arrearage as of the Date of the Petition

| | |
|---|---|
| Principal & interest due: | $171,415.67 |
| Prepetition fees due: | $6,768.35 |
| Escrow deficiency for funds advanced: | $19,786.62 |
| Projected escrow shortage: | $958.65 |
| Less funds on hand: - | $0.00 |
| Total prepetition arrearage: | $198,929.29 |

## Part 4: Monthly Mortgage Payment

| | |
|---|---|
| Principal & Interest: | $2,482.63 |
| Monthly escrow: | $479.32 |
| Private mortgage insurance: | $0.00 |
| Total monthly payment: | $2,961.95 |

## Part 5: Loan Payment History from First Date of Default

| B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, Int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1460.42 | | | Regular Payment | 9/1/09 | 1460.42 | | | | | | 412352.92 | | -10930.91 | | |
| 1460.42 | | | Regular Payment | 10/1/09 | 2920.84 | | | | | | | | | | |
| 1460.42 | | | Regular Payment | 11/1/09 | 4381.26 | | | | | | | | | | |
| 1460.42 | | | Regular Payment | 12/1/09 | 5841.68 | | | | | | | | | | |
| 1460.42 | | | Regular Payment | 1/1/10 | 7302.10 | | | | | | | | | | |
| 1460.42 | | | Regular Payment | 2/1/10 | 8762.52 | | | | | | | | | | |
| 1460.42 | | | Regular Payment | 3/1/10 | 10222.94 | | | | | | | | | | |
| 1460.42 | | | Regular Payment | 4/1/10 | 11683.36 | | | | | | | | | | |
| 1460.42 | | | Regular Payment | 5/1/10 | 13143.78 | | | | | | | | | | |
| 1460.42 | | | Regular Payment | 6/1/10 | 14604.20 | | | | | | | | | | |
| 1460.42 | | | Regular Payment | 7/1/10 | 16064.62 | | | | | | | | | | |
| 1460.42 | | | Regular Payment | 8/1/10 | 17525.04 | | | | | | | | | | |
| 1460.42 | | | Regular Payment | 9/1/10 | 18985.46 | | | | | | | | | | |

Case 18-40758  Doc 22-1  Filed 06/26/18  Entered 06/26/18 12:41:55  Page 4 of 23

EXHIBIT 1

# Mortgage Proof of Claim Attachment

Case Number: 1840758
Debtor 1: Dale Harms

## Part 5: Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, Int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees/ Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1460.42 | 1460.42 | | Regular Payment | 10/1/10 | 20445.88 | | | | | | | | | | |
| | 1460.42 | 1460.42 | | Regular Payment | 11/1/10 | 21906.30 | | | | | | | | | | |
| | 1460.42 | 1460.42 | | Regular Payment | 12/1/10 | 23366.72 | | | | | | | | | | |
| | 1460.42 | 1460.42 | | Regular Payment | 1/1/11 | 24827.14 | | | | | | | | | | |
| | 1460.42 | 1460.42 | | Regular Payment | 2/1/11 | 26287.56 | | | | | | | | | | |
| | 1460.42 | 1460.42 | | Regular Payment | 3/1/11 | 27747.98 | | | | | | | | | | |
| | 1460.42 | 1460.42 | | Regular Payment | 4/1/11 | 29208.40 | | | | | | | | | | |
| | 1460.42 | 1460.42 | | Regular Payment | 5/1/11 | 30668.82 | | | | | | | | | | |
| | 1460.42 | 1460.42 | | Regular Payment | 6/1/11 | 32129.24 | | | | | | | | | | |
| | 1460.42 | 1460.42 | | Regular Payment | 7/1/11 | 33589.66 | | | | | | | | | | |
| | 1460.42 | 1460.42 | | Regular Payment | 8/1/11 | 35050.08 | | | | | | | | | | |
| | 1460.42 | 1460.42 | | Regular Payment | 9/1/11 | 36510.50 | | | | | | | | | | |
| | 1460.42 | 1460.42 | | Regular Payment | 10/1/11 | 37970.92 | | | | | | | | | | |
| | 1460.42 | 1460.42 | | Regular Payment | 11/1/11 | 39431.34 | | | | | | | | | | |
| | 1460.42 | 1460.42 | | Regular Payment | 12/1/11 | 40891.76 | | | | | | | | | | |
| | 1460.42 | 1460.42 | | Regular Payment | 1/1/12 | 42352.18 | | | | | | | | | | |
| | 1460.42 | 1460.42 | | Regular Payment | 2/1/12 | 43812.60 | | | | | | | | | | |
| | 1460.42 | 1460.42 | | Regular Payment | 3/1/12 | 45273.02 | | | | | | | | | | |
| | 1460.42 | 1460.42 | | Regular Payment | 4/1/12 | 46733.44 | | | | | | | | | | |
| | 1460.42 | 1460.42 | | Regular Payment | 5/1/12 | 48193.86 | | | | | | | | | | |
| | 1460.42 | 1460.42 | | Regular Payment | 6/1/12 | 49654.28 | | | | | | | | | | |
| | 1460.42 | 1460.42 | | Regular Payment | 7/1/12 | 51114.70 | | | | | | | | | | |
| | 1460.42 | 1460.42 | | Regular Payment | 8/1/12 | 52575.12 | | | | | | | | | | |
| | 1460.42 | 1460.42 | | Regular Payment | 9/1/12 | 54035.54 | | | | | | | | | | |
| | 1460.42 | 1460.42 | | Regular Payment | 10/1/12 | 55495.96 | | | | | | | | | | |
| 24/12 | | | -520.00 | Auctioneer Cost | 11/1/13 | | | | | -520.00 | | | | | 520.00 | |
| 24/12 | | | -627.69 | Auctioneer Cost | 11/1/13 | | | | | -627.69 | | | | | 1147.69 | |
| | 1460.42 | 1460.42 | | Regular Payment | 11/1/12 | 56956.38 | | | | | | | | | | |
| | 1460.42 | 1460.42 | | Regular Payment | 12/1/12 | 58416.80 | | | | | | | | | | |
| | 1460.42 | 1460.42 | | Regular Payment | 1/1/13 | 59877.22 | | | | | | | | | | |
| | 1460.42 | 1460.42 | | Regular Payment | 2/1/13 | 61337.64 | | | | | | | | | | |
| 2/12/13 | | | -15.00 | Property Inspection | 11/1/13 | | | | | -15.00 | | | | | 1162.69 | |

Case 18-40758    Doc# 22-1    Filed 06/28/18    Entered 06/28/18 12:41:55    Page 5 of

EXHIBIT 1

28

# Mortgage Proof of Claim Attachment

Case Number: 1840758
Debtor 1: Dale Harms

## Part 5: Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, Int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal blance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2/3/13 | | | -89.00 | Appraisal | 11/1/13 | | | | | -89.00 | | | | | 1251.69 | |
| | 1460.42 | | | Regular Payment | 3/1/13 | 62798.06 | | | | | | | | | | |
| 2/27/13 | | | -15.00 | Property Inspection | 11/1/13 | | | | | -15.00 | | | | | 1266.69 | |
| | 1460.42 | | | Regular Payment | 4/1/13 | 64258.48 | | | | | | | | | | |
| | 1460.42 | | | Regular Payment | 5/1/13 | 65718.90 | | | | | | | | | | |
| | | | -15.00 | Property Inspection | 11/1/13 | | | | | -15.00 | | | | | 1281.69 | |
| | 1460.42 | | | Regular Payment | 6/1/13 | 67179.32 | | | | | | | | | | |
| | | | -15.00 | Property Inspection | 11/1/13 | | | | | -15.00 | | | | | 1296.69 | |
| | 1460.42 | | | Regular Payment | 7/1/13 | 68639.74 | | | | | | | | | | |
| | | | -15.00 | Property Inspection | 11/1/13 | | | | | -15.00 | | | | | 1311.69 | |
| | 1460.42 | | | Regular Payment | 8/1/13 | 70100.16 | | | | | | | | | | |
| | 1460.42 | | | Regular Payment | 9/1/13 | 71560.58 | | | | | | | | | | |
| | | | -15.00 | Property Inspection | 11/1/13 | | | | | -15.00 | | | | | 1326.69 | |
| | 1460.42 | | | Regular Payment | 10/1/13 | 73021.00 | | | | | | | | | | |
| | | | -15.00 | Property Inspection | 11/1/13 | | | | | -15.00 | | | | | 1341.69 | |
| | 1460.42 | | | Regular Payment | 11/1/13 | 74481.42 | | | | | | | | | | |
| | | -1475.35 | | Tax Bill 1 Disburser | 11/1/13 | | | | -1475.35 | | | | | -12406.26 | | |
| | | -142.59 | | Insurance Premium 1 | 11/1/13 | | | | -142.59 | | | | | -12548.85 | | |
| | | | -15.00 | Property Inspection | 12/1/13 | | | | | -15.00 | | | | | 1356.69 | |
| | 1460.42 | | | Regular Payment | 12/1/13 | 75941.84 | | | | | | | | | | |
| | | -142.59 | | Insurance Premium 1 | 12/1/13 | | | | -142.59 | | | | | -12691.44 | | |
| | | | -15.00 | Property Inspection | 1/1/14 | | | | | -15.00 | | | | | 1371.69 | |
| | 1460.42 | | | Regular Payment | 1/1/14 | 77402.26 | | | | | | | | | | |
| | | -142.59 | | Insurance Premium 1 | 1/1/14 | | | | -142.59 | | | | | -12834.03 | | |
| | 1460.42 | | | Regular Payment | 2/1/14 | 78862.68 | | | | | | | | | | |
| | | -142.59 | | Insurance Premium 1 | 2/1/14 | | | | -142.59 | | | | | -12976.62 | | |
| | | | -700.00 | Auctioneer Cost | 3/1/14 | | | | | -700.00 | | | | | 2071.69 | |
| | | | -862.93 | Auctioneer Cost | 3/1/14 | | | | | -862.93 | | | | | 2934.62 | |
| 2/14 | 1460.42 | | | Regular Payment | 3/1/14 | 80323.10 | | | | | | | | | | |
| 3/14 | | -1475.35 | | Tax Bill 1 Disburser | 3/1/14 | | | | -1475.35 | | | | | -14451.97 | | |
| | | 1475.35 | | Escrow Only Payme | 9/1/09 | | | | 1475.35 | | | | | -12976.62 | | |
| 3/17/14 | | -142.59 | | Insurance Premium 1 | 3/1/14 | | | | -142.59 | | | | | -13119.21 | | |

Case 18-40758   Doc 22-1   Filed 06/09/18   Entered 06/09/18 21:41:55   Page 6 of

EXHIBIT 1

# Mortgage Proof of Claim Attachment

<span style="float:right">(12/15)</span>

Case Number: 1840758
Debtor 1: Dale Harms

## Part 5: Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, Int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal blance | N. Accrued interest balance | O. Escrow balance | P. Fees/ Charges balance | Q. Unappli funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/1/14 | | | -86.37 | Auctioneer Cost | 4/1/14 | | | | | -86.37 | | | | | 3020.99 | |
| | 1460.42 | | | Regular Payment | 4/1/14 | 81783.52 | | | | | | | | | | |
| | 1460.42 | -142.59 | | Insurance Premium 1 | 4/1/14 | | | | -142.59 | | | | | -13261.80 | | |
| 5/20/14 | 1460.42 | | | Regular Payment | 5/1/14 | 83243.94 | | | | | | | | | | |
| | | -142.59 | | Insurance Premium 1 | 5/1/14 | | | | -142.59 | | | | | -13404.39 | | |
| | 1569.95 | | | Regular Payment | 6/1/14 | 84813.89 | | | | | | | | | | |
| | | -142.51 | | Insurance Premium 1 | 6/1/14 | | | | -142.51 | | | | | -13546.90 | | |
| | | 1475.35 | | Escrow Only Payme | 9/1/09 | | | | 1475.35 | | | | | -12071.55 | | |
| | 1569.95 | | | Regular Payment | 7/1/14 | 86383.84 | | | | | | | | | | |
| | | -146.42 | | Insurance Premium 1 | 7/1/14 | | | | -146.42 | | | | | -12217.97 | | |
| | 1569.95 | | | Regular Payment | 8/1/14 | 87953.79 | | | | | | | | | | |
| | | -146.42 | | Insurance Premium 1 | 8/1/14 | | | | -146.42 | | | | | -12364.39 | | |
| | 1569.95 | | | Regular Payment | 9/1/14 | 89523.74 | | | | | | | | | | |
| | | -146.42 | | Insurance Premium 1 | 9/1/14 | | | | -146.42 | | | | | -12510.81 | | |
| | 1569.95 | | | Regular Payment | 10/1/14 | 91093.69 | | | | | | | | | | |
| | | -146.42 | | Insurance Premium 1 | 10/1/14 | | | | -146.42 | | | | | -12657.23 | | |
| | 1569.95 | | | Regular Payment | 11/1/14 | 92663.64 | | | | | | | | | | |
| | | | -200.00 | Auctioneer Cost | 11/1/14 | | | | | -200.00 | | | | | 3220.99 | |
| | | | -92.08 | Auctioneer Cost | 11/1/14 | | | | | -92.08 | | | | | 3313.07 | |
| | | -146.42 | | Insurance Premium 1 | 11/1/14 | | | | -146.42 | | | | | -12803.65 | | |
| | 1569.95 | | | Regular Payment | 12/1/14 | 94233.59 | | | | | | | | | | |
| | | -146.42 | | Insurance Premium 1 | 12/1/14 | | | | -146.42 | | | | | -12950.07 | | |
| | 1569.95 | | | Regular Payment | 1/1/15 | 95803.54 | | | | | | | | | | |
| | | | -734.36 | Auctioneer Cost | 1/1/15 | | | | | -734.36 | | | | | 4047.43 | |
| | | | -383.00 | Auctioneer Cost | 1/1/15 | | | | | -383.00 | | | | | 4430.43 | |
| | | -146.42 | | Insurance Premium 1 | 1/1/15 | | | | -146.42 | | | | | -13096.49 | | |
| | 1569.95 | | | Regular Payment | 2/1/15 | 97373.49 | | | | | | | | | | |
| | | | -71.82 | Auctioneer Cost | 2/1/15 | | | | | -71.82 | | | | | 4502.25 | |
| | | -146.42 | | Insurance Premium 1 | 2/1/15 | | | | -146.42 | | | | | -13242.91 | | |
| | 1569.95 | | | Regular Payment | 3/1/15 | 98943.44 | | | | | | | | | | |
| 3/1/15 | | -2076.33 | | Tax Bill 1 Disburser | 3/1/15 | | | | -2076.33 | | | | | -15319.24 | | |
| 3/17/15 | | -146.42 | | Insurance Premium 1 | 3/1/15 | | | | -146.42 | | | | | -15465.66 | | |

**Mortgage Proof of Claim Attachment**

Case 18-40758   Doc 22-1   Filed 06/26/18   Entered 06/26/18 21:41:55   Page 7 of 23

EXHIBIT 1

# Mortgage Proof of Claim Attachment

(12/15)

Case Number: 1840758

Debtor 1: Dale Harms

## Part 5: Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, Int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal blance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unappli funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | -71.82 | Auctioneer Cost | 4/1/15 | | | | | -71.82 | | | | | 4574.07 | |
| | 1569.95 | | | Regular Payment | 4/1/15 | 100513.39 | | | | | | | | | | |
| | | | -15.00 | Property Inspection | 4/1/15 | | | | | -15.00 | | | | | 4589.07 | |
| | | | -71.82 | Auctioneer Cost | 4/1/15 | | | | | -71.82 | | | | | 4660.89 | |
| | | -146.42 | | Insurance Premium l | 4/1/15 | | | | -146.42 | | | | | -15612.08 | | |
| | 1569.95 | | | Regular Payment | 5/1/15 | 102083.34 | | | | | | | | | | |
| | | | -71.82 | Auctioneer Cost | 5/1/15 | | | | | -71.82 | | | | | 4732.71 | |
| | | -146.42 | | Insurance Premium l | 5/1/15 | | | | -146.42 | | | | | -15758.50 | | |
| | 1687.69 | | | Regular Payment | 6/1/15 | 103771.03 | | | | | | | | | | |
| | | 2076.33 | | Escrow Only Payme | 9/1/09 | | | | 2076.33 | | | | | -13682.17 | | |
| | | | -71.82 | Auctioneer Cost | 6/1/15 | | | | | -71.82 | | | | | 4804.53 | |
| | | -146.38 | | Insurance Premium l | 6/1/15 | | | | -146.38 | | | | | -13828.55 | | |
| | 1687.69 | | | Regular Payment | 7/1/15 | 105458.72 | | | | | | | | | | |
| | | | -74.69 | Auctioneer Cost | 7/1/15 | | | | | -74.69 | | | | | 4879.22 | |
| | | -150.67 | | Insurance Premium l | 7/1/15 | | | | -150.67 | | | | | -13979.22 | | |
| | 1687.69 | | | Regular Payment | 8/1/15 | 107146.41 | | | | | | | | | | |
| | | -150.67 | | Insurance Premium l | 8/1/15 | | | | -150.67 | | | | | -14129.89 | | |
| | 1687.69 | | | Regular Payment | 9/1/15 | 108834.10 | | | | | | | | | | |
| | | -150.67 | | Insurance Premium l | 9/1/15 | | | | -150.67 | | | | | -14280.56 | | |
| | 1687.69 | | | Regular Payment | 10/1/15 | 110521.79 | | | | | | | | | | |
| | | -150.67 | | Insurance Premium l | 10/1/15 | | | | -150.67 | | | | | -14431.23 | | |
| | 1687.69 | | | Regular Payment | 11/1/15 | 112209.48 | | | | | | | | | | |
| | | -2099.78 | | Tax Bill l Disburser | 11/1/15 | | | | -2099.78 | | | | | -16531.01 | | |
| | | -150.67 | | Insurance Premium l | 11/1/15 | | | | -150.67 | | | | | -16681.68 | | |
| | 1687.69 | | | Regular Payment | 12/1/15 | 113897.17 | | | | | | | | | | |
| | | -150.67 | | Insurance Premium l | 12/1/15 | | | | -150.67 | | | | | -16832.35 | | |
| | 1687.69 | | | Regular Payment | 1/1/16 | 115584.86 | | | | | | | | | | |
| | | -150.67 | | Insurance Premium l | 1/1/16 | | | | -150.67 | | | | | -16983.02 | | |
| | 1687.69 | | | Regular Payment | 2/1/16 | 117272.55 | | | | | | | | | | |
| | | -150.67 | | Insurance Premium l | 2/1/16 | | | | -150.67 | | | | | -17133.69 | | |
| | | 2099.78 | | Escrow Only Payme | 9/1/09 | | | | 2099.78 | | | | | -15033.91 | | |
| | 1687.69 | | | Regular Payment | 3/1/16 | 118960.24 | | | | | | | | | | |

**Mortgage Proof of Claim Attachment**

Offical Form 410A

Case 18-40758   Doc 22-1   Filed 06/08/18   Entered 06/08/18 21:41:55   Page 5 of
28

EXHIBIT 1

Case Number: 1840758

Debtor 1: Dale Harms

## Part 5: Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, Int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal blance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | -2099.78 | -2099.78 | Tax Bill 1 Disburser | 3/1/16 | | | | -2099.78 | | | | | -17133.69 | | |
| | | -150.67 | -150.67 | Insurance Premium l | 3/1/16 | | | | -150.67 | | | | | -17284.36 | | |
| | 1687.69 | | 1687.69 | Regular Payment | 4/1/16 | 120647.93 | | | | | | | | | | |
| | | -150.67 | -150.67 | Insurance Premium l | 4/1/16 | | | | -150.67 | | | | | -17435.03 | | |
| | 1687.69 | | 1687.69 | Regular Payment | 5/1/16 | 122335.62 | | | | | | | | | | |
| | | -150.67 | -150.67 | Insurance Premium l | 5/1/16 | | | | -150.67 | | | | | -17585.70 | | |
| | 1814.26 | | 1814.26 | Regular Payment | 6/1/16 | 124149.88 | | | | | | | | | | |
| | | 2099.78 | 2099.78 | Escrow Only Payme | 9/1/09 | | | | 2099.78 | | | | | -15485.92 | | |
| | | -150.63 | -150.63 | Insurance Premium l | 6/1/16 | | | | -150.63 | | | | | -15636.55 | | |
| | 1814.26 | | 1814.26 | Regular Payment | 7/1/16 | 125964.14 | | | | | | | | | | |
| | | -134.17 | -134.17 | Insurance Premium l | 7/1/16 | | | | -134.17 | | | | | -15770.72 | | |
| | 1814.26 | | 1814.26 | Regular Payment | 8/1/16 | 127778.40 | | | | | | | | | | |
| | | -134.17 | -134.17 | Insurance Premium l | 8/1/16 | | | | -134.17 | | | | | -15904.89 | | |
| | 1814.26 | | 1814.26 | Regular Payment | 9/1/16 | 129592.66 | | | | | | | | | | |
| | | -134.17 | -134.17 | Insurance Premium l | 9/1/16 | | | | -134.17 | | | | | -16039.06 | | |
| | 1814.26 | | 1814.26 | Regular Payment | 10/1/16 | 131406.92 | | | | | | | | | | |
| | | -134.17 | -134.17 | Insurance Premium l | 10/1/16 | | | | -134.17 | | | | | -16173.23 | | |
| | | | -1246.42 | Auctioneer Cost | 11/1/16 | | | | | -1246.42 | | | | | 6125.64 | |
| | 1814.26 | | 1814.26 | Regular Payment | 11/1/16 | 133221.18 | | | | | | | | | | |
| | | -2086.58 | -2086.58 | Tax Bill 1 Disburser | 11/1/16 | | | | -2086.58 | | | | | -18259.81 | | |
| | | -134.17 | -134.17 | Insurance Premium l | 11/1/16 | | | | -134.17 | | | | | -18393.98 | | |
| | 1814.26 | | 1814.26 | Regular Payment | 12/1/16 | 135035.44 | | | | | | | | | | |
| | | 66.85 | 66.85 | Escrow Only Payme | 9/1/09 | | | | 66.85 | | | | | -18327.13 | | |
| | | | -13.00 | Property Inspection | 9/1/09 | | | | | | | | | | 6138.64 | |
| | 1814.26 | | 1814.26 | Regular Payment | 1/1/17 | 136849.70 | | | | | | | | | | |
| | | | -13.00 | Property Inspection | 9/1/09 | | | | | | | | | | 6151.64 | |
| | 1814.26 | | 1814.26 | Regular Payment | 2/1/17 | 138663.96 | | | | | | | | | | |
| | | | -13.00 | Property Inspection | 9/1/09 | | | | | | | | | | 6164.64 | |
| | | -674.84 | -674.84 | Insurance Premium l | 2/1/17 | | | | -674.84 | | | | | -19001.97 | | |
| | 1814.26 | | 1814.26 | Regular Payment | 3/1/17 | 140478.22 | | | | | | | | | | |
| | | -2086.58 | -2086.58 | Tax Bill 2 Disburser | 4/10/17 | | | | -2086.58 | | | | | -21088.55 | | |
| 3/22/17 | | | -13.00 | Property Inspection | 9/1/09 | | | | | -13.00 | | | | | 6177.64 | |

EXHIBIT 1

Case Number: 1840758
Debtor 1: Dale Harms

### Part 5: Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, Int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal blance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unappli funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 8/17 | | -228.49 | | Insurance Premium l | 3/1/17 | | | | -228.49 | | | | | -21317.04 | | |
| /17 | 1814.26 | 1814.26 | | Regular Payment | 4/1/17 | 142292.48 | | | | | | | | | | |
| /17 | | 112.09 | | Insurance Refund | 9/1/09 | | | | 112.09 | | | | | -21204.95 | | |
| /17 | | 794.24 | | Insurance Refund | 9/1/09 | | | | 794.24 | | | | | -20410.71 | | |
| 4/19/17 | | 2086.58 | | Tax Refund Report | 9/1/09 | | | | 2086.58 | | | | | -18324.13 | | |
| /17 | | | -13.00 | Property Inspection | 9/1/09 | | | | | -13.00 | | | | | 6190.64 | |
| /17 | 1814.26 | 1814.26 | | Regular Payment | 5/1/17 | 144106.74 | | | | | | | | | | |
| /17 | | | -90.71 | Late Charge Assess | 5/1/17 | | | | | -90.71 | | | | | 6281.35 | |
| /17 | | 2086.58 | | Tax Refund Report | 9/1/09 | | | | 2086.58 | | | | | -16237.55 | | |
| /16/17 | | | -13.00 | Property Inspection | 9/1/09 | | | | | -13.00 | | | | | 6294.35 | |
| /17 | 2482.63 | 2482.63 | | Regular Payment | 6/1/17 | 146589.37 | | | | | | | | | | |
| /18/17 | | | -13.00 | Property Inspection | 9/1/09 | | | | | -13.00 | | | | | 6307.35 | |
| /17 | 2482.63 | 2482.63 | | Regular Payment | 7/1/17 | 149072.00 | | | | | | | | | | |
| /17 | | | -13.00 | Property Inspection | 9/1/09 | | | | | -13.00 | | | | | 6320.35 | |
| /17 | 2482.63 | 2482.63 | | Regular Payment | 8/1/17 | 151554.63 | | | | | | | | | | |
| /17 | 2482.63 | 2482.63 | | Regular Payment | 9/1/17 | 154037.26 | | | | | | | | | | |
| /17 | 2482.63 | 2482.63 | | Regular Payment | 10/1/17 | 156519.89 | | | | | | | | | | |
| /17 | | | -13.00 | Property Inspection | 9/1/09 | | | | | -13.00 | | | | | 6333.35 | |
| 2/17 | 2482.63 | 2482.63 | | Regular Payment | 11/1/17 | 159002.52 | | | | | | | | | | |
| /16/17 | | | -13.00 | Property Inspection | 9/1/09 | | | | | -13.00 | | | | | 6346.35 | |
| /17 | | -2202.78 | | Tax Bill 1 Disburser | 12/10/17 | | | | -2202.78 | | | | | -18440.33 | | |
| /17 | 2482.63 | 2482.63 | | Regular Payment | 12/1/17 | 161485.15 | | | | | | | | | | |
| /26/17 | | | -13.00 | Property Inspection | 9/1/09 | | | | | -13.00 | | | | | 6359.35 | |
| /18 | | 2202.78 | | Tax Refund Report | 9/1/09 | | | | 2202.78 | | | | | -16237.55 | | |
| /18 | 2482.63 | 2482.63 | | Regular Payment | 1/1/18 | 163967.78 | | | | | | | | | | |
| /18 | | | -13.00 | Property Inspection | 9/1/09 | | | | | -13.00 | | | | | 6372.35 | |
| /18 | 2482.63 | 2482.63 | | Regular Payment | 2/1/18 | 166450.41 | | | | | | | | | | |
| /18 | | | -13.00 | Property Inspection | 9/1/09 | | | | | -13.00 | | | | | 6385.35 | |
| /18 | 2482.63 | 2482.63 | | Regular Payment | 3/1/18 | 168933.04 | | | | | | | | | | |
| /18 | | -1346.29 | | Insurance Premium l | 3/17/18 | | | | -1346.29 | | | | | -17583.84 | | |
| 4/18 | | -2202.78 | | Tax Bill 2 Disburser | 4/10/18 | | | | -2202.78 | | | | | -19786.62 | | |
| 3/15/18 | | | -13.00 | Property Inspection | 9/1/09 | | | | | -13.00 | | | | | 6398.35 | |

Case 18-40758    Doc# 291    Filed 06/26/18    Entered 06/26/18 12:41:56    Page 10 of 23    EXHIBIT 1

# Mortgage Proof of Claim Attachment

Case Number: 1840758

Debtor 1: Dale Harms

## Part 5: Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, Int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal blance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | -370.00 | BPO/Aprsl Cost | 9/1/09 | | | | | -370.00 | | | | | 6768.35 | |
| 4/1/18 | 2482.63 | 2482.63 | 2482.63 | Regular Payment | 4/1/18 | 171415.67 | | | | | | 412352.92 | | -19786.62 | 6768.35 | |

# Exhibit 'A'

Case No.: 1840758

Debtors: Dale Harms                                        SS No.        XXX-XX-2831

Address: 930 West Cypress Ro

Oakley                    CA                    94561

Loan No: 8201

On filing petition 04/02/2018 debtor(s) owed claimant $412,352.92 plus interest on arrearages at 4.250000% per annum (rate at petition) from 09/01/2009.

ARREARAGES owed as of 04/02/2018, the date of filing of the petition.

| From Date | Through Date | Type of Charge | # | Unit Charge | Total |
|---|---|---|---|---|---|
| 09/01/2009 | 09/01/2013 | Payment @ 4.25% | 49 | $1,460.42 | $71,560.58 |
| 10/01/2013 | 05/01/2014 | Payment @ 3.25% | 8 | $1,460.42 | $11,683.36 |
| 06/01/2014 | 05/01/2015 | Payment @ 3.25% | 12 | $1,569.95 | $18,839.40 |
| 06/01/2015 | 11/01/2015 | Payment @ 3.25% | 6 | $1,687.69 | $10,126.14 |
| 12/01/2015 | 04/01/2016 | Payment @ 3.375% | 5 | $1,687.69 | $8,438.45 |
| 05/01/2016 | 05/01/2016 | Payment @ 3.5% | 1 | $1,687.69 | $1,687.69 |
| 06/01/2016 | 08/01/2016 | Payment @ 3.5% | 3 | $1,814.26 | $5,442.78 |
| 09/01/2016 | 02/01/2017 | Payment @ 3.625% | 6 | $1,814.26 | $10,885.56 |
| 03/01/2017 | 05/01/2017 | Payment @ 3.75% | 3 | $1,814.26 | $5,442.78 |
| 06/01/2017 | 07/01/2017 | Payment @ 3.75% | 2 | $2,482.63 | $4,965.26 |
| 08/01/2017 | 09/01/2017 | Payment @ 3.875% | 2 | $2,482.63 | $4,965.26 |
| 10/01/2017 | 11/01/2017 | Payment @ 4% | 2 | $2,482.63 | $4,965.26 |
| 12/01/2017 | 01/01/2018 | Payment @ 4.125% | 2 | $2,482.63 | $4,965.26 |
| 02/01/2018 | 03/01/2018 | Payment @ 4.25% | 2 | $2,482.63 | $4,965.26 |
| 04/01/2018 | 04/01/2018 | Payment @ 4.375% | 1 | $2,482.63 | $2,482.63 |
| | | Late Charge | | | $90.71 |
| | | BPO/Aprsl Cost | | | $370.00 |
| | | Property Inspection | | | $332.00 |
| | | Appraisal | | | $89.00 |
| | | Auctioneer Cost | | | $5,886.64 |
| | | Escrow Deficiency | | | $19,786.62 |
| | | Escrow Shortage | | | $958.65 |
| | | Unapplied | | | $0.00 |

|  |  |
|---|---|
| Subtotal | **$198,929.29** |
| **Total:** | **$198,929.29** |

The above figures represent the delinquency at the time of filing and do not reflect payments received after the date of filing of the bankruptcy.

Late charges accrue to the account when payments are received 16 days past the payment due date.

Loan agreements that provided for interest calculated at a daily simple rate will be reset to reflect a standard amortization rate during the pendency of your current bankruptcy.

## EXHIBIT 1

# Exhibit 'A1'

Case No.:     1840758

Debtors:      Dale Harms                                    SS No.      XXX-XX-2831

Address:      930 West Cypress Ro

              Oakley              CA              94561

Loan No:      8201

On filing petition  04/02/2018  debtor(s) owed claimant total debt of $574,402.71.


The Total Debt owed at petition:

| | |
|---|---|
| Principal Balance | $412,352.92 |
| Interest | $135,494.82 |
| Late Charge | $90.71 |
| BPO/Aprsl Cost | $370.00 |
| Property Inspection | $332.00 |
| Appraisal | $89.00 |
| Auctioneer Cost | $5,886.64 |
| Escrow Deficiency | $19,786.62 |
| Unapplied | $0.00 |

**Total Debt:**                                             **$574,402.71**

The above figures represent the owed at the time of filing and do not reflect payments received after the date of filing of the bankruptcy.

Shellpoint Mortgage Servicing services the underlying mortgage loan and note for the property referenced in this proof of claim for BANK OF NEW YORK AS TRUSTEE FOR CWALT 2005-27. In the event the automatic stay in this case is modified, this case dismisses, and/or the debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC. ALTERNATIVE LOAN TRUST 2005-27, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2005-27 .

Noteholder, directly or through an agent, has possession of the promissory note. The promissory note is either made payable to Noteholder or has been duly endorsed. Noteholder is the original mortgagee or beneficiary or the assignee of the security instrument for the referenced loan.

EXHIBIT  1



Shellpoint Mortgage Servicing
55 Beattie Place
Suite 110
Greenville, SC  29601
For Inquiries:  (800) 365-7107

Analysis Date: April 02, 2018

Loan: 8201

DALE HARMS
LAURIE HARMS
P.O. Box 1211
Oakley CA  94561

Property Address:
930 West Cypress Ro
Oakley, CA  94561

## Annual Escrow Account Disclosure Statement - Account History

The following is an overview of your escrow account with Shellpoint Mortgage Servicing. It contains the history of escrow payments made on your behalf in the prior year, and a snapshot of the anticipated disbursements for the coming year. Any potential adjustments due to increases or decreases with your escrow items may affect your monthly escrow payment. If your escrow payment increases, your monthly payment will also increase. If the escrow payment decreases, your mortgage payment will decrease.

| Payment Information | Contractual | Effective May 01, 2018 |
|---|---|---|
| P & I Pmt: | $1,460.42 | $2,482.63** |
| Escrow Pmt: | $0.00 | $479.32 |
| Other Funds Pmt: | $0.00 | $0.00 |
| Asst. Pmt (-): | $0.00 | $0.00 |
| Reserve Acct Pmt: | $0.00 | $0.00 |
| Total Payment: | $1,460.42 | $2,961.95 |

| Prior Esc Pmt | April 01, 2018 |
|---|---|
| P & I Pmt: | $2,482.63 |
| Escrow Pmt: | $0.00 |
| Other Funds Pmt: | $0.00 |
| Asst. Pmt (-): | $0.00 |
| Resrv Acct Pmt: | $0.00 |
| Total Payment: | $2,482.63 |

| Escrow Balance Calculation | |
|---|---|
| Due Date: | Sep 01, 2009 |
| Escrow Balance: | $0.00 |
| Anticipated Pmts to Escrow: | $0.00 |
| Anticipated Pmts from Escrow (-): | $0.00 |
| Anticipated Escrow Balance: | $0.00 |

| Shortage/Overage Information | Effective May 01, 2018 |
|---|---|
| Upcoming Total Annual Bills | $5,751.85 |
| Required Cushion | $958.64 |
| Required Starting Balance | $958.65 |
| Escrow Shortage | ($958.65) |
| Surplus | $0.00 |

**Cushion Calculation:** Because Shellpoint Mortgage Servicing does not set your tax amounts or insurance premiums, your escrow balance contains a cushion of $958.64. A cushion is an additional amount of funds held in your escrow in order to prevent the balance from becoming overdrawn when an increase in the disbursement amount occurs. Your lowest monthly balance should not be below $958.64 or 1/6 of the anticipated payment from the account.

** The terms of your loan may result in changes to the monthly principal and interest payments during the year.

This is a statement of actual activity in your escrow account from Aug 2017 to Apr 2018.  Last year's anticipated activity (payments to and from your escrow account) is next to the actual activity.

| Date | Payments to Escrow Anticipated | Actual | Payments From Escrow Anticipated | Actual | | Description | Escrow Balance Required | Actual |
|---|---|---|---|---|---|---|---|---|
| | | | | | | Starting Balance | $2,220.20 | ($16,237.55) |
| Aug 2017 | $444.05 | | | | * | | $2,664.25 | ($16,237.55) |
| Sep 2017 | $444.05 | | | | * | | $3,108.30 | ($16,237.55) |
| Oct 2017 | $444.05 | | | | * | | $3,552.35 | ($16,237.55) |
| Nov 2017 | $444.05 | | | | * | | $3,996.40 | ($16,237.55) |
| Nov 2017 | | | | $2,202.78 | * | County Tax | $3,996.40 | ($18,440.33) |
| Dec 2017 | $444.05 | | $2,086.58 | | * | County Tax | $2,353.87 | ($18,440.33) |
| Jan 2018 | $444.05 | | | | * | | $2,797.92 | ($18,440.33) |
| Feb 2018 | $444.05 | | | | * | | $3,241.97 | ($18,440.33) |
| Feb 2018 | | $2,202.78 | | | * | Tax Refund Report | $3,241.97 | ($16,237.55) |
| Mar 2018 | $444.05 | | $1,155.40 | $1,346.29 | * | Hazard | $2,530.62 | ($17,583.84) |
| Mar 2018 | | | | $2,202.78 | * | County Tax | $2,530.62 | ($19,786.62) |
| Apr 2018 | $444.05 | | $2,086.58 | | * | County Tax | $888.09 | ($19,786.62) |
| | | | | | | Anticipated Transactions | $888.09 | ($19,786.62) |
| Apr 2018 | | P | | | | | | ($19,786.62) |
| | $3,996.45 | $2,202.78 | $5,328.56 | $5,751.85 | | | | |

An asterisk (*) indicates a difference from a previous estimate either in the date or the amount.  If you want a further explanation, please call our toll-free number.
P - The letter (P) beside an amount indicates that the payment or disbursement has not yet occurred but is estimated to occur as shown.

EXHIBIT 1

| | | | | Analysis Date: | | April 02, 2018 |
| | | | | Loan: | 8201 | |

## Annual Escrow Account Disclosure Statement - Projections for Coming Year

This is an estimate of activity in your escrow account during the coming year based on payments anticipated to be made to and from your account.

| Date | Anticipated Payments | | Description | Escrow Balance | |
| | To Escrow | From Escrow | | Anticipated | Required |
|------|-----------|-------------|-------------|-------------|----------|
| | | | Starting Balance | $0.00 | $958.65 |
| May 2018 | $479.32 | | | $479.32 | $1,437.97 |
| Jun 2018 | $479.32 | | | $958.64 | $1,917.29 |
| Jul 2018 | $479.32 | | | $1,437.96 | $2,396.61 |
| Aug 2018 | $479.32 | | | $1,917.28 | $2,875.93 |
| Sep 2018 | $479.32 | | | $2,396.60 | $3,355.25 |
| Oct 2018 | $479.32 | | | $2,875.92 | $3,834.57 |
| Nov 2018 | $479.32 | | | $3,355.24 | $4,313.89 |
| Dec 2018 | $479.32 | $2,202.78 | County Tax | $1,631.78 | $2,590.43 |
| Jan 2019 | $479.32 | | | $2,111.10 | $3,069.75 |
| Feb 2019 | $479.32 | | | $2,590.42 | $3,549.07 |
| Mar 2019 | $479.32 | $1,346.29 | Hazard | $1,723.45 | $2,682.10 |
| Apr 2019 | $479.32 | $2,202.78 | County Tax | ($0.01) | $958.64 |
| | $5,751.84 | $5,751.85 | | | |

(Please keep this statement for comparison with the actual activity in your account at the end of the escrow accounting computation year.)

Your ending balance from the last month of the account history (escrow balance anticipated) is ($0.00). Your starting
balance (escrow balance required) according to this analysis should be $958.65. This means you have a shortage of $958.65.
This shortage may be collected from you over a period of 12 months or more unless the shortage is less than 1 month's
deposit, in which case we have the additional option of requesting payment within 30 days. We have decided to do nothing.
We anticipate the total of your coming year bills to be $5,751.85. We divide that amount by the number of payments expected during the coming year
to obtain your escrow payment.

| New Escrow Payment Calculation | |
|-------------------------------|---------|
| Unadjusted Escrow Payment | $479.32 |
| Surplus Reduction: | $0.00 |
| Shortage Installment: | $0.00 |
| Rounding Adjustment Amount: | $0.00 |
| Escrow Payment: | $479.32 |

TO THE EXTENT YOUR OBLIGATION HAS BEEN DISCHARGED, DISMISSED OR IS SUBJECT TO AN AUTOMATIC STAY OF BANKRUPTCY ORDER UNDER TITLE 11 OF THE UNITED STATES CODE
NOTICE IS FOR COMPLIANCE AND INFORMATION PURPOSES ONLY AND DOES NOT CONSTITUTE A DEMAND FOR PAYMENT OR ANY ATTEMPT TO COLLECT ANY SUCH OBLIGATION.

✂ Detach Here

Shellpoint
Mortgage Servicing
Shellpoint Mortgage Servicing
55 Beattie Place
Suite 110
Greenville, SC 29601
(800) 365-7107

**Escrow Shortage Reply (This is not a bill)**

| | |
|---|---|
| Loan Number: | 201 |
| Full Shortage Amount: | $958.65 |
| Payment Amount: | $_____ |

Your escrow shortage has been spread over 0 months, resulting in
an additional increase in your monthly payment in the amount of
$0.00.

Shellpoint Mortgage Servicing
P.O. Box 740039
Cincinnati, OH 45274-0039

IF YOU CHOOSE to pay your shortage in full, please visit
http://www.shellpointmtg.com/ in order to expedite your payment.
You can also mail this coupon with your remittance of the full
shortage amount to the address to the left

Ticor

CONTRA COSTA Co Recorder Office
STEPHEN L. WEIR, Clerk-Recorder
DOC- 2005-0142581-00

Check Number
Friday, APR 22, 2005 11:02:00
MIC    $1.00|MOD   $21.00|REC   $25.00
TCF   $20.00|DAF    $1.80|REF    $0.20
Ttl Pd   $69.00       Nbr-0002661926
                      kat/R6/1-21

Return to:
A M P R O   M O R T G A G E
CORPORATION
ATTENTION: POST CLOSING
P.O. BOX 83570
PHOENIX, AZ  85071-3570

Loan No:                          [Space Above This Line For Recording Data]                          Data ID: 558
Borrower:  DALE HARMS

# DEED OF TRUST   MIN:

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated April 14, 2005, together with all Riders to this document.

(B) "Borrower" is DALE HARMS  AND  LAURIE HARMS HUSBAND AND WIFE  . Borrower is the trustor under this Security Instrument.

(C) "Lender" is AMPRO MORTGAGE CORPORATION. Lender is a CORPORATION organized and existing under the laws of the State of DELAWARE. Lender's address is 2133 WEST PEORIA AVENUE, SUITE 130, PHOENIX, ARIZONA  85029.

(D) "Trustee" is AMPRO MORTGAGE CORPORATION.

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**CALIFORNIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
                                    Form 3005   1/01      (Page 1 of 16 Pages)

EXHIBIT 1

Loan No: Data ID: 558

(F) **"Note"** means the promissory note signed by Borrower and dated April 14, 2005. The Note states that Borrower owes Lender **THREE HUNDRED NINETY-TWO THOUSAND and NO/100-----Dollars (U.S. $ 392,000.00)** plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **May 1, 2035.**

(G) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(H) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☒ Adjustable Rate Rider ☐ Condominium Rider ☐ Second Home Rider
☐ Balloon Rider ☐ Planned Unit Development Rider
☐ 1–4 Family Rider ☐ Biweekly Payment Rider
☐ Other(s) [specify]

(J) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) **"Escrow Items"** means those items that are described in Section 3.

(N) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**CALIFORNIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3005   1/01   *(Page 2 of 16 Pages)*

EXHIBIT 1

Loan No:                                                  Data ID:  558

(R) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of CONTRA COSTA:

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

which currently has the address of 930 WEST CYPRESS ROAD,
[Street]

OAKLEY, CALIFORNIA                                       94561        ("Property Address"):
[City]                                                    [Zip Code]

     TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

**CALIFORNIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
                                          Form 3005   1/01      *(Page 3 of 16 Pages)*

142581

Loan No:                                                           Data ID: 558

   BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and
has the right to grant and convey the Property and that the Property is unencumbered, except for
encumbrances of record. Borrower warrants and will defend generally the title to the Property against
all claims and demands, subject to any encumbrances of record.

   THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform
covenants with limited variations by jurisdiction to constitute a uniform security instrument covering
real property.

   UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
   1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.**
Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any
prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow
Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made
in U.S. currency. However, if any check or other instrument received by Lender as payment under the
Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all
subsequent payments due under the Note and this Security Instrument be made in one or more of the
following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check,
treasurer's check or cashier's check, provided any such check is drawn upon an institution whose
deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.
   Payments are deemed received by Lender when received at the location designated in the Note
or at such other location as may be designated by Lender in accordance with the notice provisions in
Section 15. Lender may return any payment or partial payment if the payment or partial payments
are insufficient to bring the Loan current. Lender may accept any payment or partial payment
insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights
to refuse such payment or partial payments in the future, but Lender is not obligated to apply such
payments at the time such payments are accepted. If each Periodic Payment is applied as of its
scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such
unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do
so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower.
If not applied earlier, such funds will be applied to the outstanding principal balance under the Note
immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future
against Lender shall relieve Borrower from making payments due under the Note and this Security
Instrument or performing the covenants and agreements secured by this Security Instrument.
   2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all
payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest
due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such
payments shall be applied to each Periodic Payment in the order in which it became due. Any
remaining amounts shall be applied first to late charges, second to any other amounts due under this
Security Instrument, and then to reduce the principal balance of the Note.
   If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes
a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment
and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment
received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each
payment can be paid in full. To the extent that any excess exists after the payment is applied to the
full payment of one or more Periodic Payments, such excess may be applied to any late charges due.
Voluntary prepayments shall be applied first to any prepayment charges and then as described in the
Note.
   Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due
under the Note shall not extend or postpone the due date, or change the amount, of the Periodic
Payments.

**CALIFORNIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
                                         Form 3005   1/01      *(Page 4 of 16 Pages)*

EXHIBIT 1

142581

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**CALIFORNIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
                    Form 3005    1/01          *(Page 5 of 16 Pages)*

EXHIBIT 1

Loan No:                                                    Data ID:  558

   **4.  Charges; Liens.**  Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any.  To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

   Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument.  If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien.  Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

   Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

   **5.  Property Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance.  This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires.  What Lender requires pursuant to the preceding sentences can change during the term of the Loan.  The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably.  Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification.  Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

   If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.  Lender is under no obligation to purchase any particular type or amount of coverage.  Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect.  Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.  Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

**CALIFORNIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3005    1/01              *(Page 6 of 16 Pages)*

EXHIBIT 1

Loan No: Data ID: 558

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

    6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**CALIFORNIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3005   1/01     *(Page 7 of 16 Pages)*

EXHIBIT 1

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**CALIFORNIA** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
Form 3005    1/01    *(Page 8 of 16 Pages)*