Dale Norman Harms, *in propria persona*
2063 Main Street, Suite 282
Oakley, California
Ph: 925-785-0389
Fax: 925-627-0457

For Debtor(s)

FILED 9:55 AM LB

AUG 0 2 2018

BANKRUPTCY COURT
OAKLAND, CALIFORNIA

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In Re:

DALE NORMAN HARMS

Debtor(s)

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 18-40758-CN 13

**DEBTOR'S REPLY TO CREDITOR'S OPPOSITION TO DEBTOR'S OBJECTION TO CLAIM 2-1**

Pursuant to B.L.R 9014-1 (c) (3)

Judge: Charles Novack
Date: 08/10/2018
Time: 11:00 AM
Place: Courtroom 215

## DEBTOR'S REPLY TO CREDITOR'S OPPOSITION
## TO DEBTOR'S OBJECTION TO CLAIM 2-1

Debtor DALE NORMAN HARMS submits this Reply to Creditor's Opposition to Debtor's Objection to Claim 2-1 file by alleged creditor THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC. ALTERNATIVE LOAN TRUST 2005-27, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2005-27 (hereinafter, "BNY-Trust") as DOC #36 on July 25, 2018.

### SUMMARY

BNY-Trust failed to address the core issues, and instead tried to skirt the defects found in their proof of claim by using the standard deceptive methods used by all attorneys to avoid admitting that their claim is unperfected and facially defective. Debtor will address each of the wrong facts, assumptions and understanding of the law governing Notes, and commercial paper.

Debtor has used footnotes as part of this Reply. These footnotes are alleged, and incorporated into the Reply, and are a part of the Reply as a whole, and must not be ignored, or

Case: 18-40758   Doc# 39   Filed: 08/02/18   Entered: 08/02/18 12:54:28   Page 1 of 23

overlooked. The footnotes in this Reply will be regarded as if they were in the body of this Reply.

## DEBTOR HAS ALWAYS CONTESTED HIS ALLEGED LIABILITY

Debtor has always contested his alleged liability regarding this bogus debt. It is apparent with the schedules and filings in this case that Debtor contests this debt, so he is well within the provisions of 11 U.S.C. §502(b).

## DEBTOR HAS MET HIS BURDON OF PROOF

Debtor has met his burden of proof, and Statutory authority. To add to the already sufficient proof, and statutory authority Debtor also offers the following cases: *In re Walker* (Case No.: 10-21656-E-11 in United States Bankruptcy Court Eastern District of California) (This case is unpublished, but is still subject to Judicial Notice since it is official United States Bankruptcy Court record) an Objection to a claim by Citibank was sustained, and the proof of claim was disallowed based on identical evidence as this instant case. The Court found in DOC #66 *"Since MERS did not own the underling note; it could not transfer the beneficial interest of the Deed of Trust to another. Any attempt to transfer the beneficial interest of a trust deed without ownership of the underlying note is void under California law. Therefore Citibank has not established that it is entitled to assert a claim in this case."* And *"Under California law, to perfect the transfer of mortgage paper as collateral the owner should physically deliver the note to the transferee. Bear v. Golden Plan of California, Inc., 829 F.2d 705,709 (9th Cir, 1986). Without physical transfer, the sale of the note could be invalid as a fraudulent conveyance, Cal. Civ. Code §3440, or as unperfected, Cal. Com. Code §§9313-9314. See Roger Bernhardt, California Mortgages and Deeds of Trusts, and Foreclosure Litigation §1.26 (4th ed. 2009)."*

Also *In re Moden* (Case No.: 14-11107-HRT-13 United States Bankruptcy Court District of Colorado) (This case is unpublished, but is still subject to Judicial Notice since it is official United States Bankruptcy Court record) The identical circumstances and defects in a proof of claim by Green Tree Financial were present in the Moden case that are now present in this instant case. In the Moden case the Court disallowed any disbursements from the Chapter 13 plan to Green Tree, and in DOC #142 The Court reluctantly lifted an automatic stay, and

required Green Tree to post a bond with the public trustee prior to them initiating any foreclosure in the amount of one and one half times the face amount of the note, because they did not have possession of the original note. Likewise, if BNY-Trust suddenly says they have lost the original note, equity and maxims of law say *at the very least* that BNY-Trust should be ordered to post a bond one and one half times the face amount of the note, for the protection and peace of mind of the Debtor.

## INCOMPLETE INSTRUCTIONS DOES NOT INVALIDATE

Contrary to BNY-Trust's wrong understanding of Debtor's Objection, the incomplete instructions doesn't invalidate the purported endorsement in blank, the incomplete instructions is what converts a blank (signature only) indorsement into a special indorsement. (See Cal. Com. Code § 3205 (c)) and is what keeps anyone from enforcing the Note until someone is named. Not to mention the words "without recourse" is an admittance, acceptance, and confession that the "party" that receives the note indorsed "without recourse" can only be a holder, and can never be a holder in due course. (see Cal. Com. Code § 3414) The only party that by law may foreclose is a holder in due course[1]; a holder only has rights to the money. (see Cal. Com. Code § 3302 (e))

The Debtor challenges the Court, or anyone, to try and take a check payable to someone else to the bank to cash it, or enforce it (get paid) with an indorsement on the back that is identical to the one BNY-Trust claims standing and authority from. The bank will not pay you the amount of the check without you putting your name on the blank line. This is exactly the issue here, BNY-Trust is trying to cash, or enforce (get paid) from the Note, and cannot do so without finishing the incomplete special indorsement, and then only doing so with the Debtor's consent. There is no reason whatsoever not to finish the incomplete special indorsement, and many reasons, (including that the law of equity requires it[2] before any enforcement) FOR completing it. Debtor maintains that the evidence shows that BNY-Trust is a thief trying to enforce a note they have no standing or authority to enforce.

---

[1] See *In re Wilhelm*, 407 B.R. 392 (Bankr. D. Idaho 2009). *"[t]ransferee cannot acquire rights of a holder in due course by a transfer, directly or indirectly, from a holder in due course if the transferee engaged in fraud or illegality affecting the instrument."*

[2] See *Rodriguez v. Wells Fargo Bank, NA*, 178 So. 3d 62 (Fla. Dist. Ct. App. 2015)." [b]ecause it is sometimes forgotten that a thief can enforce a bearer note." (emphasis added)

Case: 18-40758    Doc# 39    Filed: 08/02/18    Entered: 08/02/18 12:54:28    Page 3 of 23

With no payee yet named, no transfer has occurred through which rights could be acquired. Countrywide, along with signing away all rights to the Note, wrote instructions that made its intention of negotiation of the Note **clear**. The **clear** intention was that Countrywide's negotiation of the Note will only be complete when the payee is named. The Note with an as-of-yet-unnamed payee is not, and cannot be treated as a "bearer" instrument as no person will acquire any right to the Note until a payee is named.

Even "if" the indorsement is a "blank indorsement" as BNY-Trust wrongly claims (which it is not) according to Cal. Com. Code § 3205 (b) a blank indorsement *"[M]ay be negotiated by transfer of possession alone until* (in order to enforce it) *specially indorsed."* Contrary to what BNY-Trust says in their defective proof of claim, they do not have possession of the original Note, so that by itself makes it NOT negotiated. BNY-Trust cannot enforce the Note because they do not have it[3], and without having possession, the so-called, supposed "blank indorsement" is not negotiated. Even if they did have it, they would have to first finish the incomplete special indorsement before any enforcement could commence, and that is only for the money, and not the house, since they would only be "at most" a holder and not a holder in due course.

## THE ORIGINAL NOTE MUST BE PRODUCED

Debtor asks this honorable Court to order BNY-Trust to bring the original Deed of Trust, the original Note, and some sort of "documented evidence" as to how they obtained possession of **this specific note** from Countrywide, and exactly when, to an evidence hearing, to establish that it truly has been negotiated, and so it can be examined by a forensic document examiner to verify if it is actually the original, and not just a fabricated "fake," and also to verify the alleged indorsements. It is very important that we (the Debtor and the Court) see the actual original note, because there is no way of knowing what truly is on it regarding indorsements, as there are multiple versions of "copies" of the original note with no consistency to any of them. All copies of the original note have been without any indorsements up until just recently. (See EXHIBIT 1) The copy of the original note that has the indorsements has a barcode sticker with the numbers

---

[3] See *In re Kang Jin Hwang*, 396 B.R. 757 (Bankr. C.D. Cal. 2008) *"Y is not a person entitled to enforce the instrument until Y obtains possession of the instrument. No transfer of the instrument occurs under Section 3203(a) until it is delivered to Y."*

"610 092299913 N 001 001" attached at a slant on the bottom of the first page, and has smaller holes at the top, and the holes do not match up if you put the page copy that is supposed to be the back of page 6, on the back of the page copy that is supposed to be the front of page 6. (See EXHIBIT 2) If BNY-Trust wants to "try" and foreclose on its facially defective, and invalid security interest, they MUST return the original note and deed of trust to the Debtor/Trustor marked paid in full (see Cal. Civil Code 2941) *"The purpose of this requirement is to provide the Trustors the proof they need to be sure the debt has been fully paid and free them from the liability if the original note was transferred to a bona fide purchaser for value." Huckell v Matranga* (1979) 99 Cal. App. 3d 471 [150 Cal.Rptr. 177]. The terms of the Deed of Trust state (par. 23): *"Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to convey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee."* BNY-Trust cannot have both the house (and since they are only at the most a "holder" and NOT a "holder in due course" they cannot "try" to lay claim to the house, only the money) AND the note, that is not equitable, and goes against equity law. Therefore because of the above mentioned facts and authorities BNY-Trust must produce the note they say they have possession of.[4]

## MERS DID "TRY" AND ASSIGN THE NOTE

BNY-Trust states in their opposition Page 4, Line 22 that *"No claim is being made that MERS has assigned the Note."* however, according to the last sentence of the 2nd ¶ of the Substitution of Trustee and Assignment of Deed of Trust attached to BNY-Trust's defective proof of claim, (Claim 2-1, Part 3, Page 13) MERS grants, assigns and transfers to BNY-Trust all beneficial interest in the Deed of Trust *"[T]ogether with the **note or notes**..."* (emphasis added by Debtor) This clearly shows that MERS tried to assign a note it had NO authority to assign, NOR interest in[5]. Also as the Objection Memorandum explains, the Note <u>and</u> Deed of Trust both

---

[4]  See bottom of page of Claim 2-1, Desc Main Document, Page 13 which says: *"Noteholder, directly or through an agent, **has possession of the promissory note."***
[5]  See *In re Weisband*, 427 B.R. 13 (Bankr. D. Ariz. 2010). *"Because MERS has no financial interest in the Note, it will **suffer** no injury if the Note is not paid and will realize no benefit if the DOT is foreclosed."* This case applies, because it is also in the 9th circuit. Debtor asks the Court to please read the whole case, as this case is almost identical to the circumstances in this instant case. AMPRO Mortgage Corporation (the original payee of the note) went out of business just a month after the initial note was executed, just like GreenPoint in the Weisband case.

left the MERS system with the first negotiation on the Note, so even if MERS somehow did have the authority (of which they did not) they still could not have done it, since the first indorsement form AMPRO Mortgage Corporation to Countrywide Document Custody Services, a division of Treasury Bank, N.A. ("CWDCS") made the Note <u>and</u> Deed of Trust leave the MERS system. MERS had nothing to assign to BNY-Trust, as CWDCS is not, nor has it ever been a MERS member. These facts make the Substitution of Trustee and Assignment of Deed of Trust void, and not voidable. It is a false document[6] and it needs to be expunged from the county records.

## ONLY "VALID" LIENS SURVIVE DISCHARGE

Only "valid" liens survive a Chapter 7 Bankruptcy discharge. BNY-Trust's lien <u>is not valid</u>, and <u>never has been</u> valid, for the reasons discussed in Debtor's Objection, and many other reasons, mostly of which are that the recitals in the Note and Deed of Trust, along with the Assignment, Substitutions of Trustees never happened, and there are no actual financial transactions records that evidence any of what is said in any of them. By simply regurgitating recorded title instruments without proffering the evidence to support every fact, capacity and legal effect of the instrument(s), BNY-Trust is without legal authority to enforce the terms of the Deed of Trust as a matter of law and by operation of law. The Deed of Trust is an unenforceable contract.

## CONCLUSION

Alleged creditor BNY-Trust does not demonstrate any document to support its claim that it has standing to enforce the Promissory Note and Deed of Trust. Debtor contends that the real party in interest has not come forward and the alleged creditor lacks standing.

I declare under penalty of perjury that the foregoing is true and correct.

Date: August 02, 2018          /s/ _Dale Norman Harms_

Dale Norman Harms, *in propria persona, for Debtor*

---

[6] The REMIC Trust the "Void Assignment" dated March 08, 2010 purports to assign to, closed June 29, 2005, and could <u>not</u> accept any assignments past that date. See _Glaski v. Bank of America_, 218 Cal. App. 4th 1079, 160 Cal. Rptr. 3d 449 (Ct. App. 2013). This document also has notary fraud on it, as the Debtor has collected against the bond of the Notary who allegedly signed it. Not to mention T. Sevillano has been proven to be a known robo signer, and wasn't even in the country on the date she allegedly signed the "Void Assignment." MERS is not, and has never been the "Lender," According to the Uniform Covenants paragraph 24 of the Deed of Trust only the "Lender" can appoint a successor trustee, making the alleged Substitution of Trustee which was a part of the "Void Assignment" void as well, as it was not executed by the Lender.

# EXHIBIT 1




## ADJUSTABLE RATE NOTE
(MTA-Twelve Month Average Index—Payment Caps)

MIN: 100274810400307988

THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THIS NOTE.

April 14, 2005
OAKLEY
[City]
CALIFORNIA
[State]

930 WEST CYPRESS ROAD
OAKLEY, CALIFORNIA  94561
[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 392,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. The Principal amount may increase as provided under the terms of this Note but will never exceed ONE HUNDRED FIFTEEN percent (115%) of the Principal amount I originally borrowed. This is called the "Maximum Limit." Lender is AMPRO MORTGAGE CORPORATION. I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

(A) Interest Rate

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 1.000 %. The interest rate I will pay may change.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

(B) Interest Rate Change Dates

The interest rate I will pay may change on the first day of June, 2005, and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest may change monthly, but the monthly payment is recalculated in accordance with Section 3.

(C) Index

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(D) Calculation of Interest Rate Changes

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding THREE and 75/1000 percentage point(s) ( 3.075 %) ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest rate will never be greater than 9.9500 %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

TICOR TITLE COMPANY
Hereby certifies that this is a true copy
of the original.

PayOption ARM Note - MTA Index
FE-5312 (0412)

10/04
(Page 1 of 6 Pages)

P+1040030798+2771+01+06+CWPOARMN

INITIALS:

 

## 3. PAYMENTS

### (A) Time and Place of Payments

I will make a payment every month.

I will make my monthly payments on the first day of each month beginning on June 1, 2005. I will make these payments every month until I have paid all the Principal and Interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on May 1, 2035, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. BOX 82370, PHOENIX, ARIZONA 85071-2370, or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. $ 1,260.83 unless adjusted under Section 3(F).

### (C) Payment Change Dates

My monthly payment may change as required by Section 3(D) below beginning on the first day of June, 2006, and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount the Note Holder will accept for my monthly payment which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur.

I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

### (D) Calculation of Monthly Payment Changes

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment effective on a Payment Change Date, will not increase by more than 7.5% of my prior monthly payment. This 7.5% limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and Interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number 1.075. The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment. I also have the option to pay the Full Payment for my monthly payment.

### (E) Additions to My Unpaid Principal

Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3(D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3(A).

PayOption ARM Note - MTA Index
FE-5312 (0412)

10/04
(Page 2 of 6 Pages)



P+1040030798+2771+02+06+CWPOARMN

INITIALS: _____

Case: 18-40758   Doc# 39   Filed: 08/02/18   Entered: 08/02/18 12:54:28   Page 9 of 23

 

(F) **Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed the Maximum Limit equal to ONE HUNDRED FIFTEEN percent (115%) of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the 7.5% Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

(G) **Required Full Payment**

On the fifth Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

(H) **Payment Options**

After the first Interest Rate Change Date, Lender may provide me with up to three (3) additional payment options that are greater than the Minimum Payment, which are called "Payment Options." I may be given the following Payment Options:

(i) **Interest Only Payment:** the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii) **Fully Amortized Payment:** the amount necessary to pay the loan off (Principal and Interest) at the Maturity Date in substantially equal payments.

(iii) **15 Year Amortized Payment:** the amount necessary to pay the loan off (Principal and Interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

These Payment Options are only applicable if they are greater than the Minimum Payment.

4. **NOTICE OF CHANGES**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

5. **BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments. My partial Prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

INITIALS: _DH_ _OPA_


Case: 18-40758    Doc# 39    Filed: 08/02/18    Entered: 08/02/18 12:54:28    Page 10 of 23

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.00 % of my overdue payment of Principal and Interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.



P+1040030798+2771+04+06+CWPOARMN

INITIALS: _____  _____

Case: 18-40758   Doc# 39   Filed: 08/02/18   Entered: 08/02/18 12:54:28   Page 11 of 23

 

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. SECURED NOTE

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

PayOption ARM Note - MTA Index
FE-5312 (0412)

10/04
*(Page 6 of 6 Pages)*

P+1040030798+2771+05+06+CWPOARMN

INITIALS: N.H. C.H.H.



Loan No: 1040030798 

Data ID: 558

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

................................................................(Seal)
DALE HARMS —Borrower

................................................................(Seal)
LAURIE HARMS —Borrower

*[Sign Original Only]*

PayOption ARM Note - MTA Index
FE-5312 (0412)

10/04
*(Page 6 of 6 Pages)*



P+1040030798+2771+06+06+CWPOARMN

# EXHIBIT 2

DEBTOR'S REPLY TO CREDITOR'S OPPOSITION TO DEBTOR'S OBJECTION TO CLAIM 2-1 - 8

## ADJUSTABLE RATE NOTE
### (MTA-Twelve Month Average Index—Payment Caps)

MIN: 100274810400307988

THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THIS NOTE.

April 14, 2005

OAKLEY
[City]
930 WEST CYPRESS ROAD
OAKLEY, CALIFORNIA  94561
[Property Address]

CALIFORNIA
[State]

### 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 392,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. The Principal amount may increase as provided under the terms of this Note but will never exceed ONE HUNDRED FIFTEEN percent (115%) of the Principal amount I originally borrowed. This is called the "Maximum Limit." Lender is AMPRO MORTGAGE CORPORATION. I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2.  INTEREST

(A)  Interest Rate

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 1.000 %. The interest rate I will pay may change.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

(B)  Interest Rate Change Dates

The interest rate I will pay may change on the first day of June, 2005, and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest may change monthly, but the monthly payment is recalculated in accordance with Section 3.

(C)  Index

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(D)  Calculation of Interest Rate Changes

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding THREE and 75/1000 percentage point(s) ( 3.075 %) ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest rate will never be greater than 9.9500 %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

PayOption ARM Note - MTA Index
FE-5312 (0412)

10/04
(Page 1 of 6 Pages)



P+1040030798+2771+01+06+CWPOARMN



610  092299913  N   001   001

| INITIALS: | | |
|---|---|---|

## 3. PAYMENTS

### (A) Time and Place of Payments

I will make a payment every month.

I will make my monthly payments on the first day of each month beginning on June 1, 2005. I will make these payments every month until I have paid all the Principal and Interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on May 1, 2035, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. BOX 82370, PHOENIX, ARIZONA 85071-2370, or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. $ 1,260.83 unless adjusted under Section 3(F).

### (C) Payment Change Dates

My monthly payment may change as required by Section 3(D) below beginning on the first day of June, 2006, and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount the Note Holder will accept for my monthly payment which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur.

I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

### (D) Calculation of Monthly Payment Changes

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment effective on a Payment Change Date, will not increase by more than 7.5% of my prior monthly payment. This 7.5% limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and Interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number 1.075. The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment. I also have the option to pay the Full Payment for my monthly payment.

### (E) Additions to My Unpaid Principal

Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3(D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3(A).

PayOption ARM Note - MTA Index
FE-5312 (0412)

P+1040030798+2771+02+06+CWPOARMN

INITIALS: _____ _____

Case: 18-40758    Doc# 39    Filed: 08/02/18    Entered: 08/02/18 12:54:28    Page 16 of 23

(F)  Limit on My Unpaid Principal; Increased Monthly Payment

My unpaid Principal can never exceed the Maximum Limit equal to ONE HUNDRED FIFTEEN  percent (115%) of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the 7.5% Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

(G)  Required Full Payment

On the fifth Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

(H)  Payment Options

After the first Interest Rate Change Date, Lender may provide me with up to three (3) additional payment options that are greater than the Minimum Payment, which are called "Payment Options." I may be given the following Payment Options:

> (i)  Interest Only Payment:  the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.
>
> (ii)  Fully Amortized Payment:  the amount necessary to pay the loan off (Principal and Interest) at the Maturity Date in substantially equal payments.
>
> (iii)  15 Year Amortized Payment:  the amount necessary to pay the loan off (Principal and Interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

These Payment Options are only applicable if they are greater than the Minimum Payment.

### 4.  NOTICE OF CHANGES

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

### 5.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments. My partial Prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

INITIALS:  _DH_    _CFH_

## 6.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7.  BORROWER'S FAILURE TO PAY AS REQUIRED

(A)  Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.00 % of my overdue payment of Principal and Interest. I will pay this late charge promptly but only once on each late payment.

(B)  Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C)  Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D)  No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E)  Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

## 8.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

PayOption ARM Note - MTA Index
FE-5312 (0412)

P+1040030798+2771+04+06+CWPOARMN

INITIALS: _____  _____

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. SECURED NOTE

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

PayOption ARM Note - MTA Index
FE-5312 (0412)

10/04
(Page 5 of 6 Pages)



P+1040030798+2771+05+06+CWPOARMN

INITIALS: _____ _____

Case: 18-40758   Doc# 39   Filed: 08/02/18   Entered: 08/02/18 12:54:28   Page 19 of 23

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

...................................................................(Seal)
DALE HARMS —Borrower

...................................................................(Seal)
LAURIE HARMS —Borrower

*[Sign Original Only]*

PayOption ARM Note - MTA Index
FE-5312 (0412)

10/04
*(Page 6 of 6 Pages)*



P+1040030798+2771+06+06+CWPOARMN



Pay to the Order of
Countrywide Document Custody Services
a division of Treasury Bank, N.A.
Without Recourse
AMPRO Mortgage Corporation

Esthela Quintero
Authorized Signer

PAY TO THE ORDER OF
COUNTRYWIDE HOME LOANS INC.
WITHOUT RECOURSE
COUNTRYWIDE DOCUMENT CUSTODY SERVICES,
A DIVISION OF TREASURY BANK, NA
BY
LAURIE MEDER
VICE PRESIDENT

PAY TO THE ORDER OF
WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC.
BY
David A. Spector
Managing Director

September 15, 2003

AmPro Mortgage Corporation
2133 W. Peoria Avenue, Ste. 130
Phoenix, Az 85029
602-567-1740

## BAILEE LETTER FOR COLLATERAL

The enclosed mortgage notes and other documents ("Collateral"), as more particularly described on the attached schedule, have been assigned and pledged to RFC for itself ("Lender"), as collateral under the Warehouse Loan Agreement dated as of August 1, 2003, between AmPro Mortgage Corporation ("Borrower"), and Lender

The Collateral is being delivered to you for purchase under an existing Take-Out Commitment (as defined in the Agreement). Either payment in full for the Collateral itself must be received by Lender 45 days after the date of this letter. Until that time, you are deemed to be holding the Collateral in Trust, subject to the security interest granted to Lender and as bailee in accordance with the applicable provisions of the Uniform Commercial Code. No property interest in the collateral is transferred to you until Lender receives the agreed purchase price of the Collateral. If you receive conflicting instructions regarding the Collateral from the Borrower, you agree to act in accordance with Lenders Instructions.
**LENDER RESERVES THE RIGHT, AT ANY TIME BEFORE IT RECEIVES FULL PAYMENT, TO NOTIFY YOU AND REQUIRE THAT YOU RETURN THE COLLATERAL TO LENDER.**

Payment for the Collateral must be made by wire transfer of immediately available funds to:

AmPro Mortgage Corporation
| | |
|---|---|
| Bank: | Bank One |
| City and State: | Chicago, IL |
| ABA# | 071000013 |
| Account # | 646926899 |
| Account Name: | AmPro Mortgage Corp. Pay Off Account |
| Please Reference: | Borrower Name and Loan Number |

**BY ACCEPTING THE COLLATERAL DELIVERED TO YOU WITH THIS LETTER, YOU CONSENT TO BE LENDER'S BAILEE ON THE TERMS DESCRIBED IN THIS LETTER.** If you fail to make full payments to Lender for it within 45 days after the date of this letter, you are instructed to return all of the Collateral to Lender. The preceding provisions in no way affects or impairs any claim or cause of action against you in respect of your Take-Out Commitment.

This letter binds you and your successors, assigns, trustees, conservators and receives and inures to Borrower and Lender, and their respective successor's and assigns

Ampro Mortgage Corporation as Lender

By _Edward Born_
Edward Born

Case: 18-40758   Doc# 39   Filed: 08/02/18   Entered: 08/02/18 12:54:28   Page 22 of 23

Dale Norman Harms, *Pro Se*
2063 Main Street, Suite 282
Oakley, California 94561
Ph: 925-785-0389
Fax: 925-627-0457

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | Case No.: 18-40758-CN 13 |
| DALE NORMAN HARMS, | CERTIFICATE OF SERVICE |
| Debtor(s) | |

### Certificate of Service

On August 02, 2018, I served the within **DEBTOR'S REPLY TO CREDITOR'S OPPOSITION TO DEBTOR'S OBJECTION TO CLAIM 2-1** by placing a true copy thereof in a sealed envelope with postage thereon fully prepaid, in the United States mail at Oakley, California, to all parties entitled to receive notice, addressed as follows:

**Shellpoint Mortgage Servicing**
**PO Box 10826**
**Greenville SC 29603-0826**

**ZIEVE, BRODNAX & STEELE, LLP**
**Erin M. McCartney, Bar No. 308803**
**Mark S. Krause, Bar No. 302732**
**30 Corporate Park, Suite 450**
**Irvine, CA 92606**

If Chapter 13 Trustee or U.S. Trustee is otherwise entitled to notice, he/she will receive such notice upon the electronic filing of the above named documents.

I declare under penalty of perjury that the foregoing is true and correct; executed on August 02, 2018, at Oakley, California.

Dated August 02, 2018     By: *Dale Norman Harms*

Dale Norman Harms, for Debtor

Case: 18-40758    Doc# 39    Filed: 08/02/18    Entered: 08/02/18 12:54:28    Page 23 of 23