Dale Norman Harms, *Pro Se*
2063 Main Street, Suite 282
Oakley, California 94561
Ph: 925-785-0389
Fax: 925-627-0457

FILED

AUG 3 1 2018

BANKRUPTCY COURT
OAKLAND, CALIFORNIA

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re:

DALE NORMAN HARMS,

        Debtor.

)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 18-40758

Supplemental Declaration of Dale Harms in
Support of Debtor's Objection to Claim 2-1
(DOC #26)

Judge: Charles Novack
Date: 09/21/2018
Time: 11:00 AM
Place: Courtroom 215

## **Supplemental Declaration of Dale Harms in Support of**

## **Debtor's Objection to Claim 2-1 (DOC #26)**

I, Dale Norman Harms, being first duly sworn to oath, do hereby declare as follows:

1. I am over the age of 18 years, and qualified to make this Declaration.

2. I represent the Debtor in *pro se* in Case Number 18-40758 CN 13, hereinafter ("I") or ("undersigned Declarant") or ("Declarant").

3. The undersigned Declarant wants to thank the Court for allowing him to file this Supplemental Declaration.

4. The undersigned Declarant declares that prior to the Debtor finding out about the fraud, concealment, and laws not followed in the alleged "loan" at issue in Claim 2-1, Debtor had a credit score of 760, and it never got below 700 from when Debtor first obtained credit as a kid, until Debtor learned of the fraud.

5. The undersigned Declarant is knowledgeable about the subject matter discussed in his Objection to claim, and the matters discussed at the August 10, 2018 hearing. He

understands the laws, standard practices, and the methods that must be followed regarding these issues. The Debtor is not trying to "get out of paying" a valid debt.

6. The undersigned Declarant has used footnotes in this Declaration, and said footnotes shall not be ignored, and will be considered as if they were in the body of this Declaration.

7. I am a living breathing man with an eternal soul created in the image of Elohiym.[1]

8. I was created and formed by Elohiym in his image.

9. I am standing on the dry soil of the land mass known as North America, on the state of California, one of the union states of The United States of America.

10. The undersigned Declarant declares that all the facts herein are true, correct, complete, and not misleading, to the best of undersigned Declarant's knowledge and belief, and are admissible as evidence, and if called upon as a witness, the undersigned Declarant will testify to their veracity.

11. The undersigned Declarant makes this declaration feely upon his own freewill in support, and to Supplement the Debtor's Objection to Claim 2-1 that was filed by the alleged Creditor  THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC. ALTERNATIVE LOAN TRUST 2005-27, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2005-27, ("BNY-Trust")

12. This Supplemental Declaration supplements, attaches to, and becomes a part of the Debtor's previous Objection to Proof of Claim 2-1, (DOC #26) and Amended Memorandum in Support of Debtor's Objection to Proof of Claim 2-1. (DOC #33) Any Objections in this Declaration will be regarded, and added to, the original Objection to Claim, as if they were part of, the original Objection to Claim. (DOC #26)

13. The undersigned Declarant re-alleges and incorporates by reference all the allegations in Debtor's Objection to Proof of Claim 2-1 (DOC #26), and Amended Memorandum in

---

[1] God, especially as used in the Hebrew text of the Old Testament; the God of Abraham, Issac, and Jacob; the Creator of all living things. Genesis 1:26-31

Support of Debtor's Objection to Proof of Claim 2-1 (DOC #33) as though fully set forth herein.

14. There are no conclusions, or arguments in this Declaration, only material facts.

15. The undersigned Declarant declares that the Debtor has the duty, and is exercising that duty in his Objection to Claim 2-1, to defend title against all claims and demands, as the Borrower Covenants states in the Deed of Trust[2]. ("DOT")

16. The undersigned Declarant does not have any valid, binding, expressed or implied contract(s), or obligation(s) to BNY-Trust.

17. The undersigned Declarant does not owe BNY-Trust anything.

18. The note and DOT do not contain any facts, and are full of "garbage" recitals that have no basis in reality, and cannot be proven by any prima facie evidence outside of themselves, therefore the note and DOT cannot be used as evidence of anything, as they are completely unreliable, and are full of untruths.

19. The undersigned Declarant declares that the DOT was not a valid security instrument at the time it was allegedly executed, was not a valid security instrument prior to recordation, and was not a valid security instrument when it was recorded. Therefore the recording of an invalid security instrument perfected <u>nothing</u>, and was a nullity.

20. The undersigned Declarant has <u>NEVER</u> said that the *"Debtor's discharge in a prior Chapter 7 bankruptcy case voided Secured Creditor's lien on the property."*[3] The discharge in a prior Chapter 7 bankruptcy case, **did not, and is not** why BNY-Trust's alleged lien is invalid.

21. Only **<u>valid</u>** liens survive a bankruptcy discharge. BNY-Trust's lien was invalid the day it was created. The bankruptcy discharge is <u>NOT</u> what made it invalid.

22. According to the BAILEE LETTER FOR COLLATERAL (See ATTCHMENT 0) that was attached to a copy of the note, that was received from National Default Servicing Corporation in a response to a request to verify the debt in connection with a trustee sale,

---

[2] Second Sentence of BORROWER COVENANTS: *Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.*
[3] Meet and Confer Status Report filed by BNY-Trust as ECF Doc# 43, Page 2, Lines 3 - 4

Ampro Mortgage Corporation ("Borrower") sold the Debtor's Note ("Collateral") to RFC, Residential Funding Corporation ("Lender") or it's the other way around, RFC sold it to Ampro Mortgage Corporation, it is hard to tell with the way it is worded, on September 15, 2003, one and one half years <u>before</u> the date of the note. This fact by itself renders the security instrument and note invalid.

23. The undersigned Declarant declares that there are no actual financial transactions records that evidence any of what is said in the Note, DOT, or Assignment. By BNY-Trust simply regurgitating recorded title instruments without proffering the evidence to support every fact, capacity and legal effect of the instrument(s), BNY-Trust is without legal authority to enforce the terms of the DOT as a matter of law and by operation of law. Not to mention the fact that BNY-Trust admits that *"BNY Mellon does not have any say in how the property is disposed..."* (See ATTACHMENT 1, and ¶ 48 below)

24. The California Homeowner Bill of Rights requires that competent reliable evidence support the documents used to foreclose.

25. Ampro Mortgage Corporation ("Ampro") was a fake, so called originator who also was a co-obligor named erroneously as payee of faked notes, in faked mortgage transactions where they were a fake straw lender acting on behalf of unknown parties in table funded "loans" that were PREDATORY PER SE.

26. The undersigned Declarant in *pro se* for Debtor emphatically declares that the Debtor <u>DID NOT</u> authorize, issue, or execute an "electronic" deed of trust, or an "electronic" note, otherwise known as an e-DOT, or e-Note.

27. California Civil Code Article 1, § 2941 (b) (1) (D) <u>does not</u> apply to the note and DOT at issue in Claim 2-1, as they are not "electronic."

28. The Contra Costa County Recorder always returns the original documents it records to the entity and address that is written on the first page in the upper left hand side of the document. In this instance, regarding the DOT in Claim 2-1, the Recorder would have sent the original DOT to: AMPRO MORTGAGE CORPORTION, ATTENTION: POST

CLOSING, P.O. BOX 83570, PHOENIX, AZ 85071-3570. The Contra Costa County Recorder does not have possession of the original DOT.

29. Paragraph 23 of the DOT says in part: *"Upon payment of all sums... Lender shall surrender **this Security Instrument** and all notes evidencing debt... to Trustee."* (Emphasis added by Declarant) In order for the Lender to abide by this rule it must keep the original DOT, as "this Security Instrument" is just that, the original, whether it has been recorded or not. To abide by the rules of the Security Instrument the Lender MUST keep the Original DOT and note.

30. California Civil Code Article 1, § 2941 (b) (1) says in part: *"Within 30 calendar days after... Obligation... has been satisfied... beneficiary shall... deliver to the trustee the original note, **deed of trust"*** (Emphasis added by Declarant) to abide by this California law the Lender MUST keep the Original DOT and note. It makes no difference if the DOT is recorded; the original must be kept in the event of a reconveyance.

31. California Civil Code Article 1, § 2941 (b) (1) (C) says in part: *"upon receipt of a written request by the trustor... the trustee shall then deliver... the original note and **deed of trust** to the person making that request."* (Emphasis added by Declarant) to abide by this California law the Lender MUST keep the Original DOT and note. It makes no difference if the DOT is recorded; the original must be kept in the event of a reconveyance, and the Trustor requests the originals.

32. The undersigned Declarant declares that someone having a saved pdf copy of a note on a computer does not indicate in any way whatsoever that, that person has the original. The only thing it indicates is that they have a saved pdf file on their computer, nothing else. There are many ways a person could get a saved pdf copy of a note without actually having possession of the original, the most likely is that it was either emailed to them, they got it from a server, or they made a copy of a copy.

33. The alleged so-called "loan" at issue in Proof of Claim 2-1 is actually an investment contract, disguised as a "mortgage loan." The investment contract would not have been able to take place without the undersigned Declarant's participation.

34. The Declarant's share of the proceeds from the investment of his Note in the world markets, which far exceeds the face amount of the Note, has been denied from him through fraud and deceit. In actuality BNY-Trust owes the Debtor, not the other way around.

35. There is no default, and there has never been a default.

36. BNY-Trust has no security interest in 930 West Cypress Road, Oakley California.

37. The undersigned Declarant disputes the legal effect/sufficiency of the Note, DOT, Assignment(s), Substitution of Trustee(s), Notice of Default(s), and Notice of Trustee Sale(s).

38. According to sworn testimony in *In re Kemp*, 440 B.R. 624 (Bankr. D.N.J. 2010) by Linda DeMartini a supervisor for BAC Home Loan Servicing, L.P., the Securitized Trusts never received the notes, and they never left Countrywide. Declarant understands this case is in New Jersey, but the laws that were followed were all either the States codified Uniform Commercial Code, or Federal Bankruptcy Code. The determinations and sworn testimony in this case do not conflict with California in anyway. This case is evidence from Countrywide itself that they did not transfer the notes to the securitized REMIC trusts like the Pooing and Servicing Agreement stipulates, and requires. Hence BNY-Trust does not possess the original note, not directly, or indirectly through an agent, and there is no evidence to the contrary, except inadmissible hearsay.

39. There are 62 million completely and hopelessly invalid mortgages in the United States. (See ATTACHMENT 1.1, a PDF Electronic Document sent to the Servicer dated 4/14/2015 with hyperlinks[4], on submitted "thumb drive") This document perfectly explains why BNY-Trust does not own the "loan," (which they have admitted, See ATTACHEMNT 1, and ¶ 48 below) and the ramification of that fact, which is their lien, is invalid. Debtor was unable to get the clerk to upload the PDF file on "thumb drive". Debtor will upload the file once he gets electronic filing privileges.

---

[4] Some links are "broken" in this document, as this electronic pdf letter was sent 3 years ago, and some of the links do not work anymore. The main website that had most of the documents referenced that do not show up anymore has a factual synopsis of the problem BNY-Trust faces regarding its invalid lien that is spoke about in the electronic pdf letter at: https://www.butlerlibertylaw.com/forclosure-fraud/ see page 9 of ATTACHMENT 1.1 on "thumb drive"

Supplemental Declaration of Dale Harris in Support of Debtor's Objection to Claim 2-1 (Doc #26)

40. The undersigned Declarant declares that without the original there is <u>no way</u> to authenticate the Note.

41. The undersigned Declarant declares that BNY-Trust has not sworn under penalty of perjury anywhere in their Proof of Claim to the veracity of the copy of the Note they attached to their Proof of Claim to be a <u>true and correct</u> copy of the original Note on the date they filed their Proof of Claim. Therefore Declarant in *pro se* for Debtor formally <u>Objects</u> to the copy of the Note filed with Proof of Claim 2-1 on the grounds that it is hearsay.

42. Having a "reasonable belief" under penalty of perjury is not enough to surpass the hearsay rule; in fact "reasonable belief" is "implied hearsay," and is not firsthand knowledge. Barbara Lebiedziewicz on June 11, 2018 did not have the original note in her hand and then compared the original Note to the note copy, and saw, with her own two eyes that they are indeed the same, both front and back. She just said she examined the "information" in the Proof of Claim and she had a "reasonable belief" that the "information" is true and correct. She did not say the information was "in fact" true and correct. In other words she is saying "I have been told the information is true and correct, and I reasonably believe it is true and correct, but I don't know for sure if it actually <u>IS</u> true and correct, because I have no firsthand knowledge" which is the definition of hearsay.

43. The undersigned Declarant declares that the copy of the Note attached to Claim 2-1 has <u>not</u> been authenticated by anyone, and is hearsay evidence[5] until it is sworn to be a true and correct copy by someone with firsthand knowledge who actually physically had the original Note in their hand and compared the original Note to the note copy, and saw, with their own two eyes that they are indeed the same, both front and back, on the day the Proof of Claim was filed; the Note attached to BNY-Trust's Proof of Claim is hearsay evidence and is inadmissible, it cannot be considered, and it should be disallowed. Any copy of a signature is a forgery.

---

[5] FRBP Rule 9017

44. The undersigned Declarant declares that without sequestering the original Note, (if it even exists) there is nothing keeping it from being sold and traded during these proceedings.

45. BNY-Trust never purchased, and does not own, the Note or DOT. (See ATTACHMENT 1)

46. BNY-Trust is not a Note Holder according to the definition of Note Holder that is included in the Note.

47. Any party that accepts an indorsement that has the words "without recourse" is an admittance, acceptance, and confession that the "party" that receives the note indorsed "without recourse" can only be a holder, and can never be a holder in due course.

48. The undersigned Declarant has it in writing from The Bank of New York Mellon that BNY Mellon does not have any records of Release Documents, Assignments, Substitution of Trustees, or Notices of Defaults, is not an investor, that they do not physically own the loan or the property, and that they do not have any say in how the property is disposed. (See ATTACHMENT 1[6])

49. The undersigned Declarant in *pro se* for Debtor has produced adequate sworn evidence in this Declaration signed under penalty of perjury, and in ATTACHMENT's 0 - 6 that which, if believed, refutes at least one of the allegations that is essential to claim 2-1's legal sufficiency[7]; mainly, but not only, that BNY-Trust possesses the original note, is the "Loan Owner/Note Holder/Lienholder," and a person entitled to enforce the so-called "Lien" against the property. In their own words they say *"BNY Mellon does not have any say in how the property is disposed..."* By this statement BNY-Trust is admitting that they <u>are not</u> a person entitled to enforce. This statement also goes completely contrary to the DOT; paragraph 23 is just one of many that this statement violates, making the DOT void and unenforceable because of breach of contract by BNY-Trust.

---

[6] In this email thread the things said by Dale Harms are not necessarily the views and beliefs of Dale Harms, although they could be, as this email was sent as an investigation only. However the violations of the DOT that are pointed out are material facts.
[7] See *In re Desert Springs Financial, LLC*, Unpublished, (9th Cir. BAP 2017) Pg 13, Ln 5-8

50. BNY-Trust claims they do not have any records of Release Documents, Assignments, Substitution of Trustees, or Notices of Defaults, although all these documents are executed and recorded in their name. Not only do they not have records of documents recorded in their name, but they also don't have any say in what gets put in them, or when they are recorded.

51. BNY-Trust claims they do not have any say in how the property is disposed. This is an admission that they have no authority or standing to enforce the lien. **The undersigned Declarant in *pro se* for Debtor contends that the real party in interest has not come forward, and the alleged creditor lacks standing, and their Proof of Claim must be disallowed, or amended.** (See ATTACHMENT 1)

52. BNY-Trust claims they are not an investor. This claim conflicts with the MERS lookup for this note. Declarant can only conclude that the MERS information is incorrect. (See ATTACHMENT 2)

53. BNY-Trust claims they do not physically own the loan.[8] (See ATTACHMENT 1)

54. Servicers are merely an agent[9] for the lienholder Bank, rather than the lienholder itself.[10] They are not the principle, and cannot do anything on their own apart from the direction of their principles. They never file and execute reconveyances/assignments/default/foreclosure documents in their own name, or on their own accord, nor can they lawfully do so. They have no authority on their own apart from their principles. Anything they do as an agent; their principles are liable for. (See ATTACHMENT 3)

55. Servicers are not persons entitled to enforce, nor can they be, as they are only agents, agents cannot do anything on their own. According to the Prospectus Settlement, and Pooling and Servicing Agreement for CWALT Alternative Loan Trust 2005-27, (See

---

[8] The "loan" is always the Note and Deed of Trust
[9] "...The agent … binds not himself but his principal by the contracts he makes; ..." Floyd R. Mechem, Outlines of the Law of Agency 8–9 (Philip Mechem ed., 4th ed. 1952).
[10] See *Miguel v. Country Funding Corp.*, 309 F.3d 1161 (9th Cir. 2002) *"...Countrywide was merely an agent for the lienholder Bank, rather than the lienholder itself."*

ATTACHMENT 4) the Servicer is an Obligor[11] on the Note, and is required to, and is making payments on said note, therefore since they are an "Obligor" they cannot be a person entitled to enforce, or a "Note Holder."

56. Servicers are not Creditors. (See ATTACHMENT 3)

57. The undersigned Declarant declares that both BNY-Trust, and the Servicer say they do not own the "loan." (See ATTACHMENT 1 and 3) Under 12 U.S.C. 2601 *et seq.*, 12 C.F.R. Part 1024 *et seq.*, and 15 U.S.C. 1601 *et seq.* the undersigned Declarant has the right to know who the owner of the alleged "loan" is.

58. BNY-Trust now bears the burden of proof to show by a preponderance of the evidence that its claim is valid, and the ultimate burden of persuasion remains at all times upon BNY-Trust[12].

59. BNY-Trust must produce evidence that refutes Debtor's evidence, and not just statements in a Declaration from an attorney, or an alleged representative of the Servicer with no firsthand knowledge, but separate supporting physical evidence, that's not hearsay.

60. Any Declarations filed by BNY-Trust must be signed under penalty of perjury by someone with firsthand knowledge[13].

61. The documents that are listed and presented in the BNY-Trust's Request for Judicial Notice in Support of their Proof of Claim 2-1 are all void, and cannot be used as facts of a so called loan contract that supposedly was consummated in April of 2005.

62. The undersigned Declarant declares that there was fraudulent concealment at the alleged origination.

---

[11] The section of the note titled "OBLIGATIONS OF PERSONS UNDER THIS NOTE" on page 4 identifies numerous parties as being obligated. These parties are: (1) each person who signed the note; (2) any person who is a guarantor of the note; (3) any person who is a surety of the note; (4) any person who is an endorser of the note. The governing documents (The Prospectus Supplement and the Pooling and Servicing Agreement) show that the sub-servicer(s), master servicer and the trustee are required and obligated to pay principal and interest regardless of whether or not they receive payments from the homeowners. Each of these parties has been added as a surety or a guarantor of the subject note.
[12] See *In re Desert Springs Financial, LLC*, Unpublished, (9th Cir. BAP 2017) Pg 13, Ln 10-13
[13] Firsthand knowledge are facts within the personal knowledge of the expert. *State v. Burrell*, 2006 Minn. App. Unpub. LEXIS 1117 (Minn. Ct. App. 2006)

63. The alleged "loan" was not consummated, as whom, or what actually funded the alleged "Loan" is **unknown**, and is a question of fact

64. The undersigned Declarant declares that there was never a loan between the undersigned Declarant and Ampro Mortgage Corporation.

65. The undersigned Declarant disputes the authenticity/validity/legal effectiveness of the Note and DOT.

66. The undersigned Declarant declares that the Note is not self-authenticating.

67. The undersigned Declarant specifically denies[14] that he signed the Note and DOT that was attached to Claim 2-1. (See ATTACHMENT 5)

68. The undersigned Declarant in *pro se* for Debtor Objects to the Limited Power of Attorney ("LPOA") attached to BNY-Trust's Proof of Claim (Claim 2-1, Part 3, Desc Supplement, Page 15 – 17) as it does not mention the Debtor's "loan" anywhere, it is too vague, and is not specific. It only references an alleged, so-called "Sale of Servicing Rights and Interim Servicing for Certain Mortgage Loans Letter" dated August 3, 2015, where supposedly in this letter Bank of America, N.A. ("BoA") sold the servicing rights to "certain mortgage loans" to New Penn Financial, LLC dba Shellpoint Mortgage Servicing. ("Shellpoint") Nothing in this LPOA suggests that the Debtor's alleged "loan" was part of this so called "Letter." The undersigned Declarant declares that this LPOA lacks the evidence needed to substantiate Shellpoint's claims of being BNY-Trust's Servicer for the "Loan" of Claim 2-1, it is meaningless, and proves nothing, except that they "might" have bought the servicing rights to some vague "certain mortgage loans" from BoA, who just "happens" to be the Master Servicer for CWALT Alternative Loan Trust 2005-27.

69. The Proof of Service in Claim 2-1, Part 3, Page 18 is false. The Debtor did not receive anything regarding this mailing. Barbara Lebiedziewicz, lied on this document.

70. The Proof of Service in ECF Doc# Filed: 07/13/18 Entered: 07/13/18 13:49:34 Page 4 is false. The Debtor did not receive anything regarding this mailing. The Debtor does have a

---

[14] Pursuant to, and in the nature of, FRBP Rule 7009, FRCP Rule 9 (a) (2), and CA Com. Code 3308, and UCC 3-308

Case: 18-40758   Doc# 50   Filed: 08/31/18   Entered: 08/31/18 16:15:29   Page 11 of
38

P.O. Box which is PO Box 1211, Oakley, CA 94561, and this is the address Debtor usually corresponds with Shellpoint. If the item was mailed to this address Debtor would have received it. Justin Alexander lied on this document.

71. In the meet and confer on August 14, 2018, the undersigned Declarant in *pro se* for Debtor did not say that BNY-Trust *"...was required to provide him with the Original Note."*[15] What the undersigned Declarant in *pro se* for the Debtor offered to BNY-Trust, was a trade, in which we would trade the house for the original note, and it would be done as a settlement offer, (between the current owner, **which is not the Debtor**, and BoNY) BNY-Trust's counsel Mark S. Krause declined this offer over the phone, which is quite surprising since his client says they have possession of the original note. (See ATTACHMENT 6, which is an email regarding the Meet and Confer on 08/14/18)

72. Since the original Note is scheduled as an asset of the Debtor's; Debtor is entitled to the original Note, but only if BNY-Trust ends up with the house somehow. BNY-Trust cannot, and will not ever lawfully be able to possess both the original Note, AND the House.

73. The undersigned Declarant respectfully declares that it is highly irregular for a Court to use an unpublished B.A.P. Opinion as the basis for its decisions.

74. The undersigned Declarant respectfully declares that it is highly irregular for a Court to say it has[16] to follow an unpublished B.A.P. Opinion[17]. The Court failed to cite any authority to substantiate its contention that it has to follow an unpublished B.A.P. Opinion, nor is the undersigned Declarant aware of any such authority; in fact, the exact

---

[15] Meet and Confer Status Report filed by BNY-Trust as ECF Doc# 43, Page 3, Lines 12 - 13
[16] Quoting: **The Federal Courts of Appeals, Unpublished Decisions, and the "No-Citation Rule"** Fall 2006 Page 1509, **3. The No-Citation Rule:** ..."*The Second, Seventh, **Ninth**, and Federal Circuits prohibit the citation to unpublished opinions,50 while six other circuits discourage it. A typical restrictive nocitation rule provides, "unpublished dispositions and orders of this Court are not binding precedent .... Unpublished dispositions and orders of this Court **may not be cited** to or **by the courts of this circuit** .... (See, e.g., **9THCIR. R. 36-3**. Note that citation is available in limited circumstances, such as when relevant to collateral estoppel, res judicata, double jeopardy, and other rare situations. Id.) The obvious effects of such a rule are (1) it makes unpublished opinions not binding precedent, **which means that courts do not have to follow them** and (2) it prevents attorneys from relying on such cases. These effects present constitutional problems."* (emphasis added by Declarant)
[17] Listen to audio file of Hearing conducted before Honorable Charles Novack on 08/10/2018 at Time Stamp 2:20 – 3:06, and 17:50 – 18:01, ECF DOC #40 filed 8/10/18

opposite is true. Using an unpublished opinion after January 1, 2007 is limited to three exceptions, and only when one of these exceptions is relevant to the case. The three exceptions are: (1) The doctrine of law of the case, (2) rules of claim preclusion, and (3) issue preclusion. <u>None</u> of these three exceptions are relevant to this case at bar. (See FEDERAL RULES OF APPELLATE PROCEDURE NINTH CIRCUIT RULES, Rule 36-3)

75. The undersigned Declarant respectfully declares that the Court has a duty, and must consider <u>all</u> of this Declaration, and every fact, objection and evidence that is presented, along with all arguments, and points of law presented in the Debtor's Objection to Proof of Claim 2-1, and Amended Memorandum in Support. The Court is not allowed to pick and choose which parts it wants to address, and which parts it wants to ignore. None of it can be ignored, and all of it must be considered in any decision rendered, including the initial Objection to Claim 2-1, and Amended Memorandum in Support.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

Supplemental Declaration of Dale Hanni in Support of Debtor's Objection to Claim 2-1 (5.0.26)

I, Dale Norman Harms, the undersigned Declarant, with God as my witness, certify, and declare, under the penalty of perjury, under the laws of the United States of America, and the State of California that the foregoing is true and correct.

Dated this 29th day of August, 2018; all rights and remedies reserved.

As my word is my bond; duly tendered in honor:

_Dale Norman Harms_

Declarant
2063 Main Street, Suite 282
City of Oakley, union state of California

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document

## JURAT

State of California

County of Contra Costa

Subscribed and sworn to (or affirmed) before me on this 29th day of August, 2018, by Dale Norman Harms, who proved to me on the basis of satisfactory evidence to be the person who appeared before me.

_____
Notary Public Signature

Seal:



LINDA A. PARDINI
Notary Public - California
Contra Costa County
Commission # 2159688
My Comm. Expires Aug 10, 2020

Supplemental Declaration of Dale Harms in Support of Debtor's Objection to Claim 2-1 (Doc #26)

Dale Norman Harms, *Pro Se*
2063 Main Street, Suite 282
Oakley, California 94561
Ph: 925-785-0389
Fax: 925-627-0457

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re:                                    ) Case No.: 18-40758-CN 13
                                          )
DALE NORMAN HARMS,                        ) CERTIFICATE OF SERVICE
                                          )
            Debtor(s)                     )
                                          )

**Certificate of Service**

On August 31, 2018, I served the within **Supplemental Declaration of Dale Harms in Support of Debtor's Objection to Claim 2-1 (DOC #26)** by placing a true copy thereof in a sealed envelope with postage thereon fully prepaid, in the United States mail at Oakley, California, to all parties entitled to receive notice, addressed as follows:

**Shellpoint Mortgage Servicing
PO Box 10826
Greenville SC 29603-0826**

**ZIEVE, BRODNAX & STEELE, LLP
Erin M. McCartney, Bar No. 308803
Mark S. Krause, Bar No. 302732
30 Corporate Park, Suite 450
Irvine, CA 92606**

If Chapter 13 Trustee or U.S. Trustee is otherwise entitled to notice, he/she will receive such notice upon the electronic filing of the above named documents.

I declare under penalty of perjury that the foregoing is true and correct; executed on August 31, 2018, at Oakley, California.

Dated August 31, 2018        By: *Dale Norman Harms*

Dale Norman Harms, for Debtor

# SUPPLEMENTAL DECLARATION OF DALE HARMS ATTACHMENT 0



September 15, 2003

AmPro Mortgage Corporation
2133 W. Peoria Avenue, Ste. 130
Phoenix, Az 85029
602-567-1740

### BAILEE LETTER FOR COLLATERAL

The enclosed mortgage notes and other documents ("Collateral"), as more particularly described on the attached schedule, have been assigned and pledged to RFC for itself ("Lender"), as collateral under the Warehouse Loan Agreement dated as of August 1, 2003, between AmPro Mortgage Corporation ("Borrower"), and Lender.

The Collateral is being delivered to you for purchase under an existing Take-Out Commitment (as defined in the Agreement). Either payment in full for the Collateral itself must be received by Lender 45 days after the date of this letter. Until that time, you are deemed to be holding the Collateral in Trust, subject to the security interest granted to Lender and as bailee in accordance with the applicable provisions of the Uniform Commercial Code. No property interest in the collateral is transferred to you until Lender receives the agreed purchase price of the Collateral. If you receive conflicting instructions regarding the Collateral from the Borrower, you agree to act in accordance with Lenders Instructions. **LENDER RESERVES THE RIGHT, AT ANY TIME BEFORE IT RECEIVES FULL PAYMENT, TO NOTIFY YOU AND REQUIRE THAT YOU RETURN THE COLLATERAL TO LENDER.**

Payment for the Collateral must be made by wire transfer of immediately available funds to:

AmPro Mortgage Corporation

| | |
|---|---|
| Bank: | **Bank One** |
| City and State: | **Chicago, IL** |
| ABA# | **071000013** |
| Account # | **646926899** |
| Account Name: | **AmPro Mortgage Corp. Pay Off Account** |
| Please Reference: | **Borrower Name and Loan Number** |

**BY ACCEPTING THE COLLATERAL DELIVERED TO YOU WITH THIS LETTER, YOU CONSENT TO BE LENDER'S BAILEE ON THE TERMS DESCRIBED IN THIS LETTER.** If you fail to make full payments to Lender for it within 45 days after the date of this letter, you are instructed to return all of the Collateral to Lender. The preceding provisions in no way affects or impairs any claim or cause of action against you in respect of your Take-Out Commitment.

This letter binds you and your successors, assigns, trustees, conservators and receives and inures to Borrower and Lender, and their respective successor's and assigns.

Ampro Mortgage Corporation as Lender

By _Edward Born_
Edward Born

# SUPPLEMENTAL
# DECLARATION OF DALE HARMS
# ATTACHMENT 1

# dale harms

| | |
|---|---|
| **From:** | alissa.reatz@bnymellon.com on behalf of MBS.Property.Inquiries@BNYMellon.com |
| **Sent:** | Monday, March 03, 2014 5:21 AM |
| **To:** | dale harms |
| **Subject:** | RE: Mailing address for reconveyance and release of lien |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Thank you for your recent correspondence.

As per our database, you will need to contact the servicer for the address(es) listed in your email.  The servicer info is as follows:

Servicer:  Bank of America N.A.
Phone #:  800.669.6650/ 888.219.7773/ 866.781.0029 (option 3)/ 877.498.7226/ 800.669.2443

The servicer is the direct and only contact who would have the information you are seeking.  BNY Mellon is not an investor but a Trustee and therefore does not physically own the loan or the property.  BNY Mellon does not have any say in how the property is disposed, loan modifications, etc.  This is the responsibility of the Servicer.

If you were referred to BNY Mellon by Bank of America, please provide the name of Bank of America representative for our records.

Thank you for contacting BNY Mellon.

---

**BNY Mellon Property Inquiries**
Global Corporate Trust - Mortgage Backed Securities • Fax 212.815.8094

---

**RE: Mailing address for reconveyance and release of lien**

| dale harms | to | MBS.Property.Inquiries | 02/28/2014 12:13 PM |
|---|---|---|---|

Dear BNY Mellon

The complete address is:

1

930 West Cypress Road

Oakley, California 94561

I have documents that show you as the **Lender/Beneficiary (See attached)** and according to paragraph 23, of the Deed of Trust. You as **Lender/Beneficiary are the one who is ultimately responsible for reconveyance and release of lien**. See wording of that paragraph below.

23. Upon payment of all sums secured by this Security Instrument, **Lender/Beneficiary (which is BNYM)** shall request Trustee (not you) to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee (not you). Trustee (not you) shall reconvey the Property without warranty to the person or persons legally entitled to it (me). **Lender/Beneficiary (which is BNYM)** may charge such person or persons (me) a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) (not you) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

According to this paragraph it is the **Lender/Beneficiary (which is BNYM) who requests the Trustee to reconvey**, and is the party who initiates it.

By you saying: quote: *"However, please note that BNY Mellon is solely the trustee* **(which is not true, you are the Lender/Beneficiary, the top dog as it were on the DOT)** *and any release, assignment, etc. would be handled by the applicable servicer. .*(Yes, but at the direction, knowledge, and orders of BNYM, and in BNYM's name, not the Servicer's)*"* end quote, you are completely going against the above paragraph from the Deed of Trust.

According to the Deed of trust the Lender/Beneficiary **(which is you)** tells the Trustee/Servicer (which is not you) to do any release, assignment, ect. Not the other way around. The Servicer **as agent** does everything in the name of BNYM, **under BNYM direction, knowledge, and orders.**

Also, by you saying: quote *"BNYM does not have records of these documents,* (which, this admission by itself opens BNYM up to an actionable lawsuit) *as all actions relating to the mortgage and property are taken by the Servicer.*(Yes, but at the direction, knowledge, and orders of BNYM, and in BNYM's name, not the Servicer's)" end quote. This also goes completely contrary to the Deed of trust, and is NOT the way things are supposed to be done!

2

The Deed of trust is just as binding on the Lender/Beneficiary, Trustee as it is on the Trustor/Borrower, and if there is a breach by the way things are handled, that are contrary to the terms in the DOT, the Trustor has recourse under the law to seek for damages, void of DOT, and slander of title. **Just by your two admissions above, and below in your reply, you are saying that the Principle/Lender/Beneficiary does not have records, or even keeps records of documents filed into the public for your benefit, and in your name; that is derelict of duty and is punishable by law!**

Please follow the Deed of Trust, and do what paragraph 23 states.

Dale Harms

The Declaration of Independence: "That whenever any form of government becomes destructive to these ends, it is the right of the people to alter or to abolish it, and to institute new government, laying its foundation on such principles and organizing its powers in such form, as to them shall seem most likely to effect their safety and happiness... But when a long train of abuses and usurpation, pursuing invariably the same Object evinces a design to reduce them under absolute Despotism, it is their right, it is their duty, to throw off such Government, and to provide new Guards for their future security"

*American Confidentiality Notice: This private email message, including any attachment(s) is limited to the sole use of the intended recipient and may contain Privileged and/or Confidential Information. Any and All Political, Private or Public Entities, Federal, State, or Local Corporate Governments, Municipalities, International Organizations, Corporations, and agents, investigators, or informants, officers, representatives or employees thereof, et. al., and/or Third Parties working in collusion by collecting and/or monitoring my emails, and any other means of spying and collecting these communications Without my Exclusive Permission are Barred from Any and All Unauthorized Review, Use, Disclosure or Distribution. With Explicit Reservation of All My Rights, Without Prejudice and Without Recourse to Me. Any omission does not constitute a waiver of any and/or ALL Intellectual Property Rights or Reserved Rights. Any unauthorized express use of this information or material shall constitute acceptance of co-claimant and joinder fees which start at a minimum of ten million dollars of silver per use.*
*\* NOTICE TO PRINCIPAL IS NOTICE TO AGENT \**
*\* NOTICE TO AGENT IS NOTICE TO PRINCIPAL \**

**From:** alissa.reatz@bnymellon.com [mailto:alissa.reatz@bnymellon.com] **On Behalf Of**
MBS.Property.Inquiries@BNYMellon.com
**Sent:** Friday, February 28, 2014 6:08 AM
**To:** dale harms
**Subject:** Re: Mailing address for reconveyance and release of lien

Case: 18-40758    Doc# 50    Filed: 08/31/18    Entered: 08/31/18 16:15:29    Page 21 of 38

Thank you for your recent correspondence.

Please include the complete property address in any correspondence. If you have documents showing we are the Trustee, please send it to me so I may research further. All applicable documents should be sent to me via email. However, please note that BNY Mellon is solely the trustee and any ==release, assignment==, etc. would be handled by the applicable servicer. The Servicer is the only party who will have the information you are looking for-- ==BNYM does not have records of these documents==, as all actions relating to the mortgage and property are taken by the Servicer.

Thank you for contacting BNY Mellon.

---

**BNY Mellon Property Inquiries**
Global Corporate Trust - Mortgage Backed Securities • Fax 212.815.8094

**Mailing address for reconveyance and release of lien**

dale harms          to          mbs.property.inquiries                    02/27/2014 06:02 PM

---

Dear BNYMellon

I have a loan that was paid in full of which you were the beneficiary of the Deed of Trust. Can you give me an address where I can ask for release documents? Or an address I can send all the pertinent info to, where they can then have the trustee execute the release documents?

4

Thank you

Dale Harms

The information contained in this e-mail, and any attachment, is confidential and is intended solely for the use of the intended recipient. Access, copying or re-use of the e-mail or any attachment, or any information contained therein, by any other person is not authorized. If you are not the intended recipient please return the e-mail to the sender and delete it from your computer. Although we attempt to sweep e-mail and attachments for viruses, we do not guarantee that either are virus-free and accept no liability for any damage sustained as a result of viruses.

Please refer to http://disclaimer.bnymellon.com/eu.htm for certain disclosures relating to European legal entities.[attachment "44x2HarmsAssignment.pdf" deleted by Alissa A. Reatz/NY/DOMESTIC/BNY]

The information contained in this e-mail, and any attachment, is confidential and is intended solely for the use of the intended recipient. Access, copying or re-use of the e-mail or any attachment, or any information contained therein, by any other person is not authorized. If you are not the intended recipient please return the e-mail to the sender and delete it from your computer. Although we attempt to sweep e-mail and attachments for viruses, we do not guarantee that either are virus-free and accept no liability for any damage sustained as a result of viruses.

Please refer to http://disclaimer.bnymellon.com/eu.htm for certain disclosures relating to European legal entities.

# SUPPLEMENTAL
# DECLARATION OF DALE HARMS
# ATTACHMENT 2

| | |
|---|---|
| Corporate Name: | The Bank of New York Mellon, N.A. |
| Address: | 5730 KATELLA AVENUE |
| City,State,Zip: | CYPRESS, CA 90630 |
| Toll Free Number: | |
| Direct Number: | (888) 999-0615 |
| Fax Number: | (562) 431-3974 |
| Primary Contact: | Susan D Elsner |
| Website: | |
| Member Org ID: | 1000579 |
| Lines Of Business: | ==Investor, Document Custodian== |
| eRegistry Participant: | No |
| eDelivery Participant: | No |

Back To Member Search

Copyright© 2002 by MERSCORP, Inc. 1-800-646-MERS (6377)
Other products or company names are or may be trademarks
or registered trademarks and are the property of
their respective holders.



**1 record matched your search:**

MIN: 1002748-1040030798-8    Note Date: 04/14/2005          MIN Status: Active

Servicer:   BAC Home Loans Servicing, LP                    Phone: (800) 669-6607
            Simi Valley, CA

Investor:   The Bank of New York Mellon, N.A.                Phone: (888) 999-0615
            CYPRESS, CA

Return to Search

For more information about MERS please go to www.mersinc.org

Copyright© 2006 by MERSCORP, Inc.



MERS® ServicerID - Investor - Google Chrome

🔒 Secure | https://www.mers-servicerid.org

*Select borrower type and enter borrower information to see Investor for MIN 1002748-1040030798-8.*

- **Investor for Individual Borrower**

  *Your entries may be either upper or lower case.*

  *Fields marked* * *are required.*

  **Last Name:** HARMS                    *

  **SSN:**      -    -              *

  ☐ *By checking this box, the borrower or borrower's authorized representative is attesting to the fact that he or she is in fact the borrower or borrower's authorized representative for the loan in question. Additionally, borrowers wishing to learn the identity of their loan's investor must confirm their identity by entering their last name or corporation name as well as their SSN or TIN. If this information does not match the information contained in the MERS® System for the borrower of the loan, the investor information will not be displayed. Borrowers should verify the results with their loan servicer.* *

  [ Submit ]

  **Investor for Corporation/Non-Person Entity Borrower**

  Servicer:  Bank of America, N.A.                    Phone: **(800) 669-6607**
             **Simi Valley, CA**

  Investor:  **The Bank of New York Mellon**

  Close Window

# SUPPLEMENTAL
# DECLARATION OF DALE HARMS
# ATTACHMENT 3

RECORDING REQUESTED BY:
National Default Servicing Corporation

WHEN RECORDED MAIL TO:
National Default Servicing Corporation
7720 N. 16th Street, Suite 300
Phoenix, AZ 85020

NDSC File No.   : 14-20071-SP-CA
APN No.        : 035-404-014-9

20149002104600001
CONTRA COSTA Co Recorder Office
JOSEPH CANCIAMILLA, Clerk-Recorder
DOC-2014-0021046-00
Acct 1124-Servicelink Irvine Ca Simplifile
Monday, FEB 10, 2014 11:13:19
MOD   $1.00|REC   $11.00|FTC   $0.00
DAF   $2.70|REF   $0.30|RED   $1.00
ERD   $1.00|
Ttl Pd   $17.00   Rcpt # 0001899332
MNH/RC/1-1

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## SUBSTITUTION OF TRUSTEE

WHEREAS, Dale Harms And Laurie Harms Husband And Wife was the original Trustor(s), Ampro Mortgage Corporation was the original Trustee and Mortgage Electronic Registration Systems Inc., As Nominee For Ampro Mortgage Corporation, Its Successors And Assigns was the original Beneficiary under that certain Deed of Trust dated 04/14/2005 and recorded on 04/22/2005 as Instrument No. 2005-0142581-00 of the Official Records of CONTRA COSTA County, State of CA and

WHEREAS, the undersigned is the present beneficiary under the said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

NOW, THEREFORE, the undersigned hereby substitutes NATIONAL DEFAULT SERVICING CORPORATION, An Arizona Corporation, whose address is 7720 N. 16th Street, Suite 300, Phoenix, Arizona 85020, as Trustee under said Deed of Trust. Said Substitute Trustee is qualified to serve as Trustee under the laws of this state.

Whenever the context hereof requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

Select Portfolio Servicing, Inc., as servicing agent for Bank of New York Mellon, f/k/a Bank of New York, as Trustee for the registered holders of Alternative Loan Trust 2005-27, Mortgage Pass-Through Certificates Series 2005-27

Dated : FEB 0 3 2014

By: _L.C. Birkinshaw_
Its: Document Control Officer

STATE OF   Utah
COUNTY OF   Salt Lake

On Feb 3, 2014, before me, the undersigned, a Notary Public for said State, personally appeared L.C. Birkinshaw who personally known to me (or who proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _Kyle Norman_

KYLE NORMAN
Notary Public State of Utah
My Commission Expires on:
August 22, 2017
Comm. Number: 669617

That by reason thereof, the present beneficiary under such Deed of Trust has executed and delivered to duly appointed Trustee a written Declaration of Default and Demand for Sale, and has deposited with said duly appointed Trustee such Deed of Trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

The undersigned mortgagee, beneficiary or authorized agent for the mortgagee or beneficiary pursuant to California Civil Code § 2923.55 declares that the mortgagee, beneficiary or the mortgagee's or beneficiary's authorized agent has either contacted the borrower or tried with due diligence to contact the borrower as required by California Civil Code 2923.55.

Dated :      2-7   , 2014

National Default Servicing Corporation, as Trustee for Select Portfolio Servicing, Inc., as servicing agent for Bank of New York Mellon, f/k/a Bank of New York, as Trustee for the registered holders of Alternative Loan Trust 2005-27, Mortgage Pass-Through Certificates Series 2005-27

By:  Helen Rayburn, Trustee Sales Processor

Page 3 of 3

1   *Ameriquest Mortg. Co.*, 342 F.3d 899, 902 (9th Cir.2003). A claim for rescission

2   must be brought within three years of the same date. 15 U.S.C. § 1635(f).

3         The U.S. Supreme Court recently reaffirmed the three-year right of

4   rescission under 15 USC §1635(a) ("Section 1635") when it held that such a

5   rescission did not require the commencement of a legal action, *so long as the*

6   *borrower provided notice to the creditor* **within that 3-year period**. *Jesinoski v.*

7   *Countrywide Home Loans, Inc.*, 135 S. Ct. 790, 790 (2015). ("A borrower

8   exercising his right to rescind under the Act need only provide written notice to

9   his lender within the 3–year period, not file suit within that period. Section

10   1635(a)'s unequivocal terms state that a borrower "shall have the right to rescind

11   ... *by notifying the creditor ... of his intention to do so*" (emphasis added).").

12         Plaintiff's Loan was originated in April 14, 2005. (RJN, Exhibit 1; FAC,

13   ¶14, Exhibit A.) Under both Section 1635 and *Jesinoski*, a claim for TILA

14   rescission must have been brought by April 14, 2008. Plaintiff did not seek a

15   rescission of the Loan until, allegedly September 10, 2009, well past one year

16   after his deadline to effect a valid rescission of the Loan expired. (See FAC,

17   Exhibit D). Therefore, this claim fails as it is time-barred.

18        **2.   Plaintiff Did Not Send the Rescission Letter to the Creditor**

19         To effectively exercise the right of rescission under TILA, Plaintiff was

20   required to provide notice of the rescission 1) to her *creditor or its assignee*, 2)

21   within three years of the closing of the loan. *Beach v. Ocwen Federal Bank*, 523

22   U.S. 410 (1998); *McOmie-Gray v. Bank of America Home Loans*, 667 F. 3d 1325,

23   1329 (2012).

24         These requirements are set forth within the plain language of the statute.

25   Nothing in either the language of the statute or the Notice of Right to Cancel

26   states that a notice of rescission can effectively be sent to the *servicer* of the Loan.

27   Indeed, the Ninth Circuit has firmly held that a notice of rescission

28   delivered to the bank's *servicing agent* within the statutory three-year period was

6

WRIGHT FINLAY & ZAK<sup>LLP</sup>
ATTORNEYS AT LAW

insufficient notice to the *creditor* under TILA. *Miguel v. Country Funding Corp.*, 309 F.3d 1161 (9th Cir. 2002); *see also*, discussion in *McOmie-Gray v. Bank of America Home Loans*, 667 F. 3d 1325, 1329 (2012).  In the FAC, Plaintiff asserts that he sent his purported notice of rescission to BAC Home Loans Servicing, LP, *the loan servicer*. (FAC, ¶18.)  Because he does not claim to have sent it to the creditor, this claim fails.

### C. Plaintiff's Wrongful Foreclosure Claim Fails To State A Valid Claim Against Defendants

Plaintiff advances several theories of why the Loan is invalid and why Defendants cannot foreclose.  First, Plaintiff contends that Ampro was identified as the Lender and therefore, only Ampro, not MERS, could "assign the Note or substitute the Trustee." (FAC, ¶21.)  Second, Plaintiff contends that "none of Defendants hold the original note…" and that "[n]one of Defendants have a true security interest in the RMCT, and hence, NDSC does not have authority to cause the foreclosure, or trustee's sale of the Home."[1] (FAC, ¶22.)  Third, Plaintiff seems to invoke the popular *post-closing transfer* theory to conclude any subsequent sale and transfer of the Loan was invalid. (FAC, ¶¶23.)  Finally, Plaintiff asserts that because he obtained a bankruptcy discharge in 2016, in which he incorrectly (and seemingly intentionally) listed the Loan as an *unsecured debt*, the Loan obligation is somehow extinguished. (FAC, ¶30.)[2]  However, none of these claims hold any weight.

#### 1. MERS Has the Right To Execute A Substitution of Trustee and An Assignment of Deed of Trust

Plaintiff's challenge to MERS' involvement with the DOT is legally meritless. California Court of Appeals decisions have consistently upheld MERS'

---

[1] Plaintiff apparently refers to the Loan under the term RCMT.
[2] In doing so, Plaintiff possibly committed bankruptcy fraud.

7

# S S | SELECT
SERVICING, inc.

P.O. Box 65250
Salt Lake City, UT 84165

*[handwritten: Scanned 04/06/15]*



*[handwritten stamp: RETURN TO SENDER I HAVE NO CONTRACT WITH YOU]*

March 6, 2015

Dale Harms
Laurie Harms
930 West Cypress Road
Oakley, CA 94561

Re: *Select Portfolio Servicing Loan No.* 0014019053

*[handwritten: does not exist in ALT-2005-27 The Note holder.]*

Dear Dale Harms:

Thank you for your correspondence and correspondence dated February 23, 2015. In the correspondences, you raised a notice of error regarding:

- Note Holder
- Original Creditor
- Loan Origination
- Loan Servicing
- Validation of Debt
- Loan Modification
- Intent to Preserve Interest
- Payment History

We have reviewed your notice of error related to Loan Servicing, Validation of Debt, Loan Modification, Intent to Preserve Interest, Payment History and have determined that it is substantially similar to the assertion of error responded to by Select Portfolio Servicing, Inc. (SPS) on January 28, 2015, December 20, 2014, March 18, 2014, January 31, 2014.

Accordingly, we are unable to provide a different response unless and until you provide us new and material information that is reasonably likely to cause us to change our prior determination that no error occurred and your account was not serviced properly.

However, SPS was able to review our records regarding Note Holder, Original Creditor, Loan Origination and we have concluded the following.

**Note Holder** – We responded to your concern regarding the Note Holder under separate correspondence on March 2, 2015 (copy enclosed). If you have any questions, please contact our Customer Service Department toll-free at 800-258-8602. Representatives are available Monday through Thursday, 8:00 a.m. to 11:00 p.m., Friday 8:00 a.m. to 9:00 p.m. and Saturday 8:00 a.m. to 2:00 p.m., Eastern Time.

**Original Creditor**- The original creditor for your loan is Ampro Mortgage Corporation and the address is 2133 West Peoria Avenue, Suite 130, Phoenix, Arizona, 85029.

**Loan Origination** – SPS is a mortgage servicer. This means that we did not originate the mortgage loan, nor do we own the mortgage loan. As the servicer of the loan, SPS accepts monthly payments and administers the terms of the loan. Because SPS did not originate the loan, we cannot respond to any allegations made regarding origination

# S P S SELECT SERVICING, inc.

P.O. Box 65250
Salt Lake City, UT 84165

*[handwritten: scanned 07/06/15]*

*[stamp: RETURN TO SENDER — I HAVE NO CONTRACT WITH YOU]*

December 20, 2014

Dale Harms
Laurie Harms
930 West Cypress Road
Oakley, CA 94561

Facsimile: (925) 627-0457

Re:    Select Portfolio Servicing Loan No. 0014019053

*[handwritten: does not exist in ACT 2005-27 The note holder.]*

Dear Dale Harms:

Thank you for your correspondences dated October 23, 2014, December 3, 2014 and your correspondence received on December 12, 2014. In the correspondences, you raised notice of errors regarding:

- Validation of the Debt
- Loan Transfer
- The Servicing of the Loan
- Respond via Email
- Correspondence/Harassment

Our investigation included a review of our records and we have concluded the following.

**Validation of Debt:** To validate the debt, we have included a signed copy of your Adjustable Rate Note. In addition, we have enclosed a signed copy of the Deed of Trust.

**Loan Transfer:** In the correspondence dated October 23, 2014 you indicated that Select Portfolio Servicing, Inc. (SPS) does not have any interest or valid claim to the above referenced property. SPS acquired the servicing of your loan from Bank of America, N.A. (BOA) on October 16, 2012 as indicated in the Notice of Assignment, Sale or Transfer of Servicing Rights dated October 10, 2012 (copy enclosed). Additionally, we have enclosed BOA correspondence dated December 1, 2014 in which BOA confirms your BOA loan number 92299913 was service released to SPS.

**The Servicing of the Loan:** SPS is a mortgage servicer. This means that we did not originate the mortgage loan, nor do we own the mortgage loan. As the servicer of the loan, SPS accepted monthly payments and administered the terms of the loan. Because SPS did not originate the loan, we cannot respond to any allegations made regarding origination. Please refer to section 20 of the enclosed Deed of Trust for additional information regarding the Change of Loan Servicer.

**Respond via Email:** You have requested that we respond to you by email. It is our policy to respond to any inquiries or requests for information by United States Postal Service.

**Correspondence/Harassment:** As is common in the mortgage servicing industry, SPS will call or forward correspondence to notify you that your payment has not been received by the date due. We regret if you believe that these correspondences are harassment. It is our intention to assist you in keeping your account current and avoiding any additional charges to your account.

*[handwritten: I owe you nothing. I have no contract with you. Payment has been made. There IS no default. YOU have no standing. YOU have no interest.]*

# SUPPLEMENTAL
# DECLARATION OF DALE HARMS
# ATTACHMENT 4

# Alternative Loan Trust 2005-27 –EXCERPTS ON ADVANCES

## Table of Contents

Excerpts from the Prospectus Supplement......................................................................... 1

Excerpts from the Pooling and Servicing Agreement ........................................................ 3

*These excerpts are not all inclusive.*

## Excerpts from the Prospectus Supplement

ADVANCES

The master servicer will make cash advances with respect to delinquent payments of principal and interest on the mortgage loans to the extent the master servicer reasonably believes that the cash advances can be repaid from future payments on the mortgage loans. These cash advances are only intended to maintain a regular flow of scheduled interest and principal payments on the certificates and are not intended to guarantee or insure against losses. See "Servicing of Mortgage Loans -- Advances" in this prospectus supplement.

ADVANCES

Subject to the following limitations, the master servicer will be required to advance before each Distribution Date, from its own funds or funds in the Certificate Account that do not constitute Available Funds for the Distribution Date, an amount equal to the aggregate of payments of principal and interest on the Mortgage Loans (net of the related Master Servicing Fee) that were due in the related Due Period and that were delinquent on the related Determination Date, together with an amount equivalent to interest on each Mortgage Loan as to which the related mortgaged property has been acquired by the trust fund through foreclosure or deed-in-lieu of foreclosure. The "DETERMINATION DATE" is the 22nd day of each month or, if that day is not a business day, the preceding business day; provided that the Determination Date in each month will be at least two business days before the related Distribution Date. Advances are intended to maintain a regular flow of scheduled interest and principal payments on the certificates rather than to guarantee or insure against losses. The master servicer is obligated to make advances with respect to delinquent payments of principal of or interest on each Mortgage Loan to the extent that the advances are, in its reasonable judgment, recoverable from future payments and collections or insurance payments or proceeds of liquidation of the related Mortgage Loan. If the master servicer determines on any Determination Date to make an advance, the advance will be included with the distribution to certificateholders on the related Distribution Date. Any failure by the master servicer to make a deposit in the Certificate Account as required under the pooling and servicing agreement, including any failure to make an advance, will constitute an event of default under the pooling and servicing agreement if the

Case: 18-40758    Doc# 50    Filed: 08/31/18    Entered: 08/31/18 16:15:29    Page 36 of 38

failure remains unremedied for five days after written notice of the event of
default. If the master servicer is terminated as a result of the occurrence of
an event of default, the Trustee or the successor master servicer will be
obligated to make any advance, in accordance with the terms of the pooling and
servicing agreement.

CERTAIN MODIFICATIONS AND REFINANCINGS
The master servicer may modify any Mortgage Loan, provided that the master
servicer purchases the Mortgage Loan from the trust fund immediately following
the modification. A Mortgage Loan may not be modified unless the modification
includes a change in the interest rate on the related Mortgage Loan to
approximately a prevailing market rate. Any purchase of a Mortgage Loan subject
to a modification will be for a price equal to 100% of the Stated Principal
Balance of that Mortgage Loan, plus accrued and unpaid interest on the Mortgage
Loan up to the first day of the month in which such proceeds are to be
distributed at the applicable net mortgage rate, net of any unreimbursed
advances of principal and interest on the Mortgage Loan made by the master
servicer. The master servicer will deposit the purchase price in the Certificate
Account within one business day of the purchase of that Mortgage Loan. Purchases
of Mortgage Loans may occur when prevailing interest rates are below the
interest rates on the Mortgage Loans and borrowers request modifications as an
alternative to refinancings. The master servicer will indemnify the trust fund
against liability for any prohibited transactions taxes and related interest,
additions or penalties incurred by any REMIC as a result of any modification or
purchase.

## Excerpts from the Pooling and Servicing Agreement

Advance: As to each Loan Group, the payment required to be made by the Master Servicer with respect to any Distribution Date pursuant to Section 4.01, the amount of any such payment being equal to the aggregate of payments of principal and interest (net of the Master Servicing Fee) on the Mortgage Loans in such Loan Group that were due on the related Due Date and not received by the Master Servicer as of the close of business on the related Determination Date, together with an amount equivalent to interest on each Mortgage Loan as to which the related Mortgaged Property is an REO Property (net of any net income on such REO Property), less the aggregate amount of any such delinquent payments that the Master Servicer has determined would constitute a Nonrecoverable Advance if advanced.

Available Funds: As to any Distribution Date and each Loan Group, the sum of (a) the aggregate amount held in the Certificate Account at the close of business on the related Determination Date in respect of the related Mortgage Loans pursuant to Section 3.05(b), net of the related Amount Held for Future Distribution and net of amounts permitted to be withdrawn from the Certificate Account pursuant to clauses (i)-(viii), inclusive, of Section 3.08(a) in respect of the Mortgage Loans in that Loan Group and amounts permitted to be withdrawn from the Distribution Account pursuant to clauses (i)-(v) inclusive of Section 3.08(b) in respect of the Mortgage Loans in that Loan Group, (b) the amount of the related Advance, (c) in connection with Defective Mortgage Loans in such Loan Group, as applicable, the aggregate of the Purchase Prices and Substitution Adjustment Amounts deposited on the related Distribution Account Deposit Date, and (d) the Transfer Payment Received plus interest thereon as provided in Section 4.05 for such Loan Group less the Transfer Payment Made plus interest thereon as provided in Section 4.05 for such Loan Group; provided, however, that on the second Senior Termination Date, Available Funds with respect to the Loan Group relating to the remaining Senior Certificate Group shall include the Available Funds from the other Loan Group and on any Distribution Date thereafter, Available Funds shall be calculated based upon all the Mortgage Loans in the Mortgage Pool, as opposed to the Mortgage Loans in the related Loan Group.

Excess Proceeds: With respect to any Liquidated Mortgage Loan, the amount, if any, by which the sum of any Liquidation Proceeds received with respect to such Mortgage Loan during the calendar month in which such Mortgage Loan became a Liquidated Mortgage Loan plus any Subsequent Recoveries received with respect to such Mortgage Loan, net of any amounts previously reimbursed

Case: 18-40758    Doc# 50    Filed: 08/31/18    Entered: 08/31/18 16:15:29    Page 38 of 38